# JOHN CORBETT

## *v.*

# PHINEAS UNDERWOOD.

1. PLEDGE—*defined.* A pledge is the lien created by the delivery of personal property by the owner to another, upon an express or implied agreement that it shall be retained as a security for an existing or future debt. To create a pledge, the pledgee must have the possession and control of the property.

2. Where a commission merchant contracts for the purchase of grain for another to be delivered at a future time, the principal making an advance on the purchase, which is in the merchant's name, and agrees to keep the margin good up to the time of delivery, the relation of pledgor and pledgee will not be created, so as to require a notice of the time and place of a sale on failure to keep up the margins.

3. PRINCIPAL AND AGENT—*right of agent to sell grain contracted for, on failure to keep margin good.* If a party employs a commission merchant to contract in the board of trade of Chicago for the purchase and future delivery of grain, on a speculation, and makes the necessary advance as a margin, and, by the rules and usages of the board, with which he is conversant, it becomes necessary, owing to a decline in prices, for him to advance a further sum to keep the margin good, which he fails to do when notified and requested, the merchant in whose name the contract is made, and who is liable for the price agreed to be paid, will have the right to make sale of the grain to save himself, and if loss is thereby incurred he will not be liable therefor to his principal.

4. CUSTOM AND USAGE—*as evidence, to change terms of contract.* Where parties have settled the terms and conditions of a contract by agreement, they will be concluded by it, regardless of any usage or custom.

5. SAME—*when admissible in evidence.* Proof of usage or custom may be received to interpret the intention of parties, and to ascertain the nature and extent of their contracts, arising, not from express stipulation, but from mere implications and presumptions, and acts of doubtful and equivocal character, and to fix and explain the meaning of words and expressions of doubtful and various senses.

6. Where a party conversant with the rules and usages of the Chicago board of trade employed a commission merchant to make purchases of grain for future delivery for him, and afterwards sued the merchant for a loss incurred by the sale, which was made for want of necessary advances to meet a decline in prices, it was *held,* that proof of the usage of the board of trade was properly admitted to justify the act of the defendant.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

This was an action of assumpsit, by the appellant against the appellee. The material facts of the case are stated in the opinion of the court.

Messrs. TRUMBULL, CHURCH & TRUMBULL, for the appellant.

Messrs. GOOKINS & ROBERTS, for the appellee.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action, brought by John Corbett against Phineas L. Underwood, to recover a certain amount of money lost in a grain transaction in Chicago.

It appears, from the evidence, that Corbett, who resided at Jerseyville, on the 15th day of May, 1873, gave appellee, who was a commission merchant in Chicago, doing business under the firm name of Underwood & Co., an order to purchase for him 50,000 bushels of corn, to be delivered at any time during the month of August, at seller's option. $2000 was deposited as a margin. The corn was purchased at 45 cents per bushel, and so reported to appellant. On the first day of September, 1873, another order was given for the purchase of 50,000 bushels more of corn for October delivery. This last order was filled at $43\frac{1}{4}$ cents per bushel, a margin of $2500 having been deposited. The plaintiff had other transactions on the board of trade, through Underwood as commission merchant, but this litigation involves only the two transactions in corn.

On the 20th and 21st of June, the corn first purchased was sold by defendant at a loss, on account of the failure of plaintiff, after due notice, as is claimed, to keep on deposit a sufficient margin to protect the contract. The last purchase was also sold, for the same reason, on the 24th and 25th days of September. An account of the whole transaction was furnished plaintiff, showing a balance of $157.42 in defendant's hands subject to the order of plaintiff, $150 of which he drew,

leaving a balance of $7.42, for which the court, who heard the cause without a jury, rendered judgment.

It is first urged that the parties sustained the relation of pledgor and pledgee, and no sale of the corn could be legally made without notice to plaintiff of the time and place of sale.

The arrangement entered into between the parties can not be regarded, in a legal sense, as a pledge of personal property. A pledge is defined to be delivery of goods by a debtor to his creditor, to be kept till the debt is discharged. Jones' Bailment, 117; 2 Kent's Com. 577.

Parsons, in his work on Contracts, Vol. 3, page 271, says, a pledge is a lien created by the owner of personal property by the mere delivery of it to another, upon an express or implied understanding that it shall be retained as security for an existing or future debt.

In this case, no corn was delivered to the defendant to hold as security for a debt or liability, nor did he secure warehouse receipts representing corn. He had neither the possession nor control of personal property, which is necessary to create the relation of pledgor and pledgee.

The defendant was a commission merchant, dealing on the board of trade in Chicago. The letters and telegrams in evidence show that the plaintiff was familiar with the rules and regulations that governed dealers on the board. Indeed, he, in connection with a partner, had been dealing in various products on the board for some time, through the defendant as commission merchant, and the evidence is clear that he was familiar with the usages and rules that controlled operators on the board.

When the plaintiff ordered the corn bought, he knew he was required to advance to his commission merchant ten cents per bushel as a margin, and, if corn declined in the market before the day of delivery, he was required to make additional advances so as to keep the margin good. The margin required in the first instance was advanced, and the defendant purchased the corn of third parties, and entered into a contract by which it was to be delivered at a future day. Under the contract, the

corn contracted for was to be delivered to the defendant, and he was responsible to the plaintiff for its delivery to him; but if the plaintiff failed to keep the margin good in case corn declined before the day of delivery arrived, then the defendant had the right to sell on the market, and charge the losses to the plaintiff.

This, in brief, was the transaction entered into by the parties, from which it will readily be seen that the relation of pledgor and pledgee did not exist. The defendant held merely an executory contract for the delivery to him of a certain amount of corn on a future day. On that day the plaintiff would be entitled to the corn, provided in the meantime he kept his margin good, and was ready to pay for and receive the corn on the day it was required to be delivered.

The case of *Markham* v. *Forden*, 41 N. Y. 235, cited by appellant as an authority to control this case, is so different in its facts that the rule there announced can not apply here.

In that case, the stocks, which had been purchased by the commission merchant, and where it was held the relation of pledgor and pledgee existed, were delivered into the actual possession of the commission merchant; while here, the property bought never came into the possession of the defendant; he held merely an executory contract.

If the corn purchased had been delivered to the defendant, and he had paid for the same, and held the possession thereof as security for the money advanced, then it might, with propriety, be claimed that the relation of pledgor and pledgee existed, and notice of the time and place of sale should be given; but such is not the case presented by this record.

It is next urged, that the evidence of usage on the board of trade in Chicago to sell property held for a customer when the margin fell short, without notice of the time and place of sale, and as to the time allowed after demand to furnish margins, was inadmissible.

The evidence was not offered for the purpose of changing or varying the terms or conditions of a contract made by the parties, nor could it be resorted to for such a purpose. Where par-

ties have settled the terms and conditions of a contract by agreement, they will be concluded by the contract made, regardless of usage or custom; but here, the plaintiff was dealing on the board of trade. He gave the defendant an order to purchase for him, on the board, a certain quantity of corn. He advanced the margins required by the rules of the board. The grain was purchased on the board. In the absence of a special agreement between the parties defining their respective obligations, it was proper to resort to the rules and regulations existing on the board, for the purpose of showing the understanding of the parties as to what their relative duties and obligations were, in regard to the grain purchased on the board.

Greenleaf, vol. 2, sec. 251, in speaking in reference to the usages of trade, says: "Their true office is, to interpret the otherwise indeterminate intentions of parties, and to ascertain the nature and extent of their contracts, arising, not from express stipulation, but from mere implications and presumptions, and acts of a doubtful and equivocal character, and to fix and explain the meaning of words and expressions of doubtful or various senses."

As the purchase was made on the board of trade, and in view of the rules, which were known to both parties, we are inclined to the opinion that the evidence introduced was proper.

The next question raised by the plaintiff is, that the sales of June 20 and 21, and of September 24 and 25, were made without sufficient notice. It is true that the plaintiff was not advised of the time and place when and where the sales would be made; but that he had ample notice that his margins were not sufficient to protect the contracts, owing to the decline in the price of corn, and unless he furnished money to keep the margins good the corn would be sold, is abundantly established by the evidence. As early as the 4th of June, the corn market commenced declining, and in reply to a letter of the defendant calling for more margins, the plaintiff says: "Can you carry me for a few days until I can borrow the money on collaterals or real estate? Will pay you interest if you wish; do not want to be sold out in corn or anything else." During the

next ten days, a portion of the margin required was raised, but the market continued to decline, and on the 16th day of June it was lower than it had been for several years, of which the plaintiff was notified, and on the 18th his margins were short near $2000, for which the defendant drew on him, and notified him at the same time its payment was necessary to protect his trade, under the rules. On the 19th, the plaintiff acknowledges receipt of the letter, but says: " Can't pay the draft to-day; have not got it to send. I will come up Monday night next; must hold my deals, as I do not want them sold."

In this communication he gives no assurance that he would pay the money to protect the contract, even if the defendant would wait until he should go to Chicago on the next Monday. On receipt of this letter, the defendant, on June 20, sold on the market 30,000 bushels of the corn, and informed the plaintiff by telegraph. To this notice no reply was made, and on the following day, having received no assurance of money from the plaintiff, he sold the remaining 20,000 bushels.

In regard to the September sales, the proof of demand for margins, and notice to the plaintiff of the consequence of a failure to comply, was even stronger than on the other sales. On the 20th, defendant wrote the plaintiff that: " The financial crash in New York has had a depressing effect on our corn market, and this A. M. the market was quite panicky." On the 22d, a telegram was sent, as follows: " Corn 39½, seller October. Send us margin if you want us to hold." On 23d, defendant wrote as follows:"We would advise you to be prepared with margins, as the market may, under a panic, absorb everything you have here. The closing price to-day, 38¾ cts., Oct., would justify us in calling for $1000 additional; but we don't want to be too severe on you, and will wait until to-morrow, hoping prices may do better. Don't you think it would pay you to come up and look the ground over?" On the 24th, the following telegram was sent: " Send or bring currency; draft no use; corn 37½, October. Answer by wire." To this no reply was made, and on the same day the following was sent: " Must sell corn unless you send us $2000 at once; answer."

In the afternoon of the same day, no reply having been received, the defendant sold 15,000 bushels of the corn, and notified the plaintiff of the fact by telegram, and that the balance would be sold unless he remitted at once. No reply having been received, the remainder of the corn was sold on the following day.

It is true, the plaintiff wrote the defendant on the 22d that he could draw on him for margins, but this, of itself, will not excuse him from furnishing the money required, as he was expressly notified that a draft could not be used.

We are therefore of opinion that ample notice was given the defendant to furnish the margins required to protect the contracts, and as he failed to comply the defendant was fully justified in making the sales. The plaintiff was aware, when he embarked in speculation on the board of trade, of the hazards incident to the business, and his losses must be attributed to his want of judgment in the rise and decline of grain, rather than to any misconduct on the part of the defendant.

The facts in regard to the notice and sale in this case are not essentially different from those in *Mœller* v. *McLagan*, 60 Ill. 317, where the sale was held to be warranted.

It has been suggested that the transaction was a gambling operation. The evidence does not, however, justify the assumption. So far as has been established by the evidence, the transaction was not a deal in options, but, on the other hand, the defendant purchased, from third parties, corn, to be delivered at a future day, and had the margins been kept good by the plaintiff, as required by the usages of the board of trade, under which the contract was made, we perceive nothing to justify the inference that the corn would not have been delivered at the time required by the contracts.

Perceiving no error in the record, the judgment will be affirmed.                   *Judgment affirmed.*

Mr. JUSTICE DICKEY: I concur in the conclusions in the opinion, but do not concur in the mode of stating the distinction between this case and the case of an ordinary pledge.