### ROBINSON et al. v. CRAWFORD.

(Supreme Court, Appellate Division, First Department. June 28, 1898.)

BROKER—PURCHASE ON MARGIN—LOSS—REIMBURSEMENT.

The plaintiffs, brokers on a cotton exchange, bought certain cotton for the defendant for future delivery, on a margin, and sent a signed memorandum, stating that it was understood that they reserved the right to close transactions at their discretion, when margins were near exhaustion, without further notice. Thereafter, upon a heavy decline in price, after vain efforts to communicate with the defendant, they sold the cotton, and brought this action to recover a resulting debit balance. It appeared that the transaction was one of a series of the same kind, between the same parties, in each of which the defendant admitted that he had received a memorandum in the same terms; and a credit balance therefrom formed the basis of the transaction in question. *Held*, that the rights of the parties were to be determined in view of their established course of dealing, which implied a liability upon the defendant's part to pay any debit balance resulting from the sale thus authorized.

Appeal from trial term, New York county.

Action by Thomas M. Robinson and Charles W. Benner against Samuel Crawford. From a judgment entered on a verdict, and from an order denying a motion for new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Frank C. Avery, for appellant.
Samuel H. Benton, for respondents.

PATTERSON, J. In disposing of this case it is necessary to consider but one of the questions discussed on argument. As it comes before us, that question is whether, as to the particular transactions forming the basis of the respondents' claim, the appellant is bound by a term implied in those transactions, which authorized the respondents to close them out, as they did, and impose upon the defendant a legal liability for the balance claimed herein. It appears by the uncontradicted testimony that on the 17th of October, 1895, the respondents, brokers on the Cotton Exchange, at the personal request of the defendant, bought for him 500 bales of cotton for January delivery. On the next day—the 18th of October—they bought for him two lots for January delivery, one of 1,000 bales and another of 500 bales. When the transactions of the 18th were made, a memorandum, signed by the respondents, was sent to the appellant. It contained, among other things, in small print, the following words, viz.: "It is further understood that on all marginal business the right is reserved to close transactions at our discretion when margins are near

exhaustion, without further notice." These were marginal dealings. On the 21st of October the respondents were carrying for the appellant the 2,000 bales referred to, and on that day, the market price of January futures having declined very considerably at the Cotton Exchange, efforts were made on the part of the respondents to communicate with the appellant, and to demand from him further margin. The market had fallen off from the 18th, and a check of the appellant for $1,049 had been given to the respondents on account of the transactions, but that check was not paid on presentation, although it was subsequently honored. On the afternoon of October 21st the respondents, not receiving any more margin from the appellant, closed out the transactions, the result of which showed a debit balance of three thousand and odd dollars, for which this suit was brought. The respondents justify the course they pursued, and claim the right to recover this balance, on the ground that it was one of the understood terms upon which the business was done, and therefore part of the contract, and that, when margins were near exhaustion, they had the right to close the transactions out at their discretion, without further notice to their customer. The rights of the parties in this particular action, we think, are to be determined in view of the special circumstances of the case and the relations they assumed to each other under the course of dealing established between them by a series of transactions with which those had in October were, as matter of fact, connected. We do not mean to say that independent transactions had between a broker and his customer are, under all circumstances, to be affected by the same general construction; but where there has been an habitual course of dealing respecting contracts and transactions of a particular kind, that course of dealing "is a material and important element in determining the construction to be put upon their acts." Shelton v. Transportation Co., 59 N. Y. 258; Mills v. Railroad Co., 45 N. Y. 622. The transactions which are involved in this action were had upon the Cotton Exchange. They were subject to the rules of the Cotton Exchange, and were not independent and separate in such a sense as to make them disconnected from other antecedent transactions of the same kind had between the appellant and the respondents. The terms and conditions upon which those antecedent transactions were had were known to the appellant, and the fair inference is that, inasmuch as the transactions of October were precisely the same in kind as those formerly had, and grew out of, and in effect were a continuation of, prior dealings, they were entered into upon the same terms, and with reference to the same conditions. It is uncontradicted that the October transactions were based upon a margin consisting of moneys in the hands of the respondents, constituting a credit balance resulting to the appellant from previous transactions of precisely the same character as those had in October, and which balance, instead of being taken in money, was again employed in the same kind of ventures. In other words, the appellant had been speculating in cotton futures through the respondents as his brokers, and on the 17th of October had a credit balance of several thousand dollars in their hands. He wished to employ that balance as margins in the same character of transactions, and

instructions were given by him to his brokers to do so. His earlier dealings had begun in May, 1895. He knew precisely on what terms these transactions were entered into. He testifies himself that he had been dealing with the respondents from May, 1895; that he had had five or six transactions with them; that they resulted in a profit of $2,-900, and that on each transaction he had received a memorandum from the respondents corresponding with the particular memorandum that was sent to him after the transactions of October 18th; that on each of these memoranda the small print provision respecting the privilege reserved to the brokers was contained. He must have read it, and therefore knew of it, and further knew that it was one of the conditions on which the particular kind of business for which he gave the October orders was conducted. The right reserved to the brokers was, therefore, by the course of business, thoroughly understood by the appellant, and made a term of the contract by which the respondents were employed to make the October transactions. The liability to pay this balance consequently exists, and the respondents were entitled to recover, there being no question of the fairness of the sales made in closing out the contracts, nor of the legality of such contract.

It is suggested that there was no promise made that the appellant would pay any losses incurred upon closing out the transactions; but such a promise is implied. It was held in Bibb v. Allen, 149 U. S. 482, 13 Sup. Ct. 950, that where a broker is employed to sell property for future delivery a promise is implied on the part of the principal to repay or reimburse the broker for losses or expenditures necessitated by or resulting from the performance of the employment. The losses in this case were settled and adjusted in accordance with the rules of the Cotton Exchange. The appellant was not ignorant of the method by which such losses were settled or adjusted, and there was an implied promise on his part to make the losses or liabilities of the brokers resulting from the transactions good to them. The view we have taken of the case makes it unnecessary to consider any other proposition urged by the appellant as a ground for reversal of the judgment.

The judgment and order appealed from must be affirmed, with costs. All concur.