## SANGER v. PRICE et al.

(Supreme Court, Appellate Division. First Department. June 20, 1906.)

BROKERS—LIABILITY TO PRINCIPAL—TRANSACTIONS ON MARGINS.

Where, under an agreement between brokers and their principal, the principal was to deposit the amount of margins required in a bank named, and in pursuance of the agreement the deposits were usually made within an hour of the receipt of notification from the brokers, but in the case in question the brokers closed out the transaction within a few minutes after notifying their principal and before he had opportunity to make the necessary deposit, they are liable to him for the loss sustained in restoring the contracts.

Patterson, J., dissenting.

Appeal from Judgment on Report of Referee.

Action by Charles L. Sanger against Theodore H. Price and others. From a judgment entered upon the report of a referee dismissing the complaint, plaintiff appeals. Reversed, and new trial ordered.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and HOUGHTON, JJ.

Henry B. B. Stapler, for appellant.
Edward B. Hill, for respondents.

INGRAHAM, J. The plaintiff was a cotton merchant doing business in Waco, Tex., and the defendants were cotton, stock, and produce brokers, doing business in the city of New York. Prior to January 1, 1900, there was a correspondence between the plaintiff and the defendants in relation to the defendants acting for the plaintiff in the purchase and sale of cotton in the city of New York. The first letter was dated December 9, 1899, whereby the defendants inform the plaintiff that they had established a private telegraph wire with a Messrs. Logan & Co., and at their suggestion solicited a portion of the plaintiff's cotton business, the defendants stating to the plaintiff:

"We should be pleased to hear from you, and if you think favorably of our suggestion kindly advise us of the name of the bank in which you make your deposits, so that we may forward a copy of our code for use in connection with telegraphic communications."

In reply the plaintiff wrote on December 11, 1899, stating that they would like to give the defendants some of their business, and suggesting that the defendants send their code to the Waco State Bank with whom the plaintiff deposited against wire business.

On December 26, 1899, the defendants wrote to the plaintiff:

"As soon as you can see your way clear to do so, we shall be very glad indeed to receive a portion of your business, and when business between us becomes practicable, we shall be obliged if you will kindly advise us of the name of the bank in which you make your deposits, so that we may make the necessary arrangements with them for the conduct of the business."

In reply on December 30th, plaintiff wrote to the defendants asking them to enter into correspondence with the Waco State Bank regarding deposits as they intended to begin doing some business with the defendants very shortly, and continuing:

"We would also ask that you please advise us if you intend making no charge for exchange which is the usual custom on the wire. Our agreement with the other parties with whom we have been operating is that we place money with Waco State Bank when called and you do the same."

In reply on January 3, 1900, the defendants wrote to the plaintiff stating that they were forwarding that day to the Waco State Bank a copy of their private cipher code "for use in connection with the telegraphic advice of any deposits that they may receive from you for our account. * * * We shall be pleased to waive any exchange charges which may arise in connection with the transmission of funds necessary to the conduct of the business. Such margins as may be required are to be deposited by you to our credit with the Waco State Bank and, when re-payments are necessary, we will instruct the bank to make such payments to you, if our balance there is sufficient to meet them, and, if not, we will deposit the necessary amount with their New York correspondent here. Advise of receipt of same will then be wired, and immediate payment can be made to you."

This correspondence established the contract under which the business between the parties was to be conducted, and, under that understanding, the plaintiff gave to the defendant orders for the purchase and sale of cotton, and the plaintiff deposited the amount of margin required by the defendants with the Waco State Bank to the credit of the defendants. When the defendants required additional margin they telegraphed to the plaintiff over the private wire. On Saturday, March 10, 1900, the defendants had sold on the order of the plaintiff certain cotton for future delivery in New York. At the price at which cotton was selling on that day, the plaintiff should have had a margin of about $3,700. The margin which he actually had was only $509. The Cotton Exchange in New York closed on Saturday at 12 o'clock. At about half-past 11, New York time, and half-past 10 Waco time, the plaintiff received in Waco the following telegram: "Deposit $2,500, Answer." This telegram not being signed by defendants the plaintiff did not recognize that it came from them. He, however, thinking it was from them, commenced to examine his accounts with defendants and told the telegraph operator to see if it was authentic. Before receiving any information about that telegram, and at about five minutes before 12, he received a telegram with defendants' signature, asking him to deposit $2,500. This notice he complied with, making the deposit at 35 minutes after 12; at 29 minutes after 12 telegraphing to defendants that he was depositing $2,500. In the meantime the defendants without further notice had closed out the plaintiff's account at 12 o'clock, at which time the Cotton Exchange in New York closed on Saturday. Immediately upon receiving information of this action of the defendants the plaintiff took measures to resell the cotton so as to place him in the position that he was in prior to the closing out of his transactions by defendants, which resulted in a loss to the plaintiff of $1,053.20, for which the plaintiff brought this action.

In all the dealings between the plaintiff and the defendants prior to March 10, 1900, the defendants had called upon the plaintiff for margin when required which calls were responded to by plaintiff depositing to the credit of the defendants in the Waco State Bank the amount called

for. Such deposits had before this time been made within an hour of the receipt by the plaintiff of the demand for additional margin. It appeared that on March 5, 1900, the defendants had sent a demand to the plaintiff for additional margin of $1,200 which the plaintiff found, by examining his account, was erroneous, and upon notifying the defendants of that fact they recalled their demand. During all the time that the business had continued the telegraphic communications from the defendants to the plaintiff had been signed "Me," and all communications from the plaintiff to the defendants had been signed "By" which was the signatures according to the telegraphic code which had been arranged between them. Thus at 12 o'clock in New York, on the 10th day of March, 30 minutes after the receipt of the first telegram not signed by defendants, and five minutes after the telegram signed by the defendants was received, the defendants closed all existing contracts without notice to the plaintiff of their intention so to do. I think that if the arrangement which was to control was that made by these letters, plaintiff was entitled to notice that additional margin was required and a reasonable time to comply with the notice before the defendants could close the outstanding contracts. Plaintiff's business was solicited by the defendants. They stated to him the conditions which were to govern. The parties were many miles distant from each other and it was for the defendants' benefit that they suggested that a bank at Waco where plaintiff resided was to be selected in which such margins as the defendants required could be deposited for account of the defendants. Such bank having been selected, defendants agreed that "such margins as may be required are to be deposited by you (plaintiff) to our credit with the Waco State Bank." The obligation to make such deposit would only arise when margins were "required." When defendants required the margins to be deposited plaintiff was entitled to a reasonable time in which to make such deposit. Defendants understood the situation when they solicited plaintiff's business. They imposed the conditions under which it was to be done, and plaintiff gave defendants the orders upon such conditions. Upon the evidence half an hour was certainly not an unreasonable time to make the deposit after the receipt of the notice. Plaintiff received the first telegram requiring a deposit of $2,500 at half past 11, New York time, but this notice was not signed by defendants and plaintiff was entitled to reasonable time to ascertain whether the telegram came from the defendants. Then at 5 minutes before 12 came the telegram from defendants requiring the deposit; but, without waiting for a reply or giving plaintiff any time to reply or to make the deposit, defendants closed out the contracts. The fact that the cotton exchange closed at 12 o'clock on Saturday and that the defendants had to act then or wait until Monday morning does not at all affect the obligation of the defendants under their agreement to give the plaintiff a reasonable opportunity to furnish the required margins. The defendants could have required additional margins at such a time as would have given plaintiff an opportunity to respond before the exchange closed. Having failed to give such notice, and having given a notice at such a time when the exchange closed before the plaintiff could be put in default, they were bound to wait until plaintiff was in default

before closing out the transactions. The act of the defendants in closing out the contract was therefore unauthorized and plaintiff having within a reasonable time made the deposit, was entitled to call on the defendants to restore the contracts and having failed to do so was entitled to recover the damages sustained.

The learned referee seems from his opinion to have agreed with this conclusion, but held that the rights of the parties were charged by certain notices that were printed upon the letters sent to the plaintiff when each order was executed. It appeared that when the defendants executed an order they sent to their customer a telegram of the transaction followed by a notice by mail known as "a confirmation." The notices were upon printed blanks filled in to confirm a particular transaction of which notice by telegram had been given. Upon these printed blanks, there was after the signature of the defendants the following notice printed in small type:

"It is further understood that on all marginal business the right is reserved to close transactions when margins are running out without further notice and to settle contracts in accordance with rules and customs of exchange when order is executed."

In these notices there is a general statement that upon marginal business the right is reserved to close transactions when margins are running out "without further notice." This contemplated that the customer should have some notice that margins were running out so that he could protect himself and this notice was provided for by the special arrangement made by the correspondence. There was no notice given to the plaintiff that the arrangement under which the business had been commenced was to be changed, or that the defendants would claim the right to close out transactions without any notice and before the margin was actually exhausted. The defendants had solicited the plaintiff's business upon terms which they imposed and which had been acted on by the parties; and, I do not think that this arrangement could be changed without some express agreement or some notice to the plaintiff by which he was given an opportunity to protect himself. In this case the defendants acting under an arrangement which had been assented to made upon the plaintiff a demand for margin. Here was a practical construction of the agreement which shows that the plaintiff was entitled to some notice which necessarily implies that he was entitled to a reasonable time in which to comply with its requirements and in the face of the agreement actually made and the acts of the parties under it giving to the printed notice full effect it was not a justification for closing out the transaction without giving the plaintiff an opportunity to furnish the margin required.

The case of Robinson v. Crawford, 31 App. Div. 228, 52 N. Y. Supp. 560, is relied upon by the defendants as sustaining the conclusion arrived at by the learned referee; but the facts in that case are entirely different. It there appeared that the plaintiffs, who were cotton brokers, purchased certain bales of cotton at the personal request of the defendant; that when this transaction was made a memorandum signed by the respondent that it was further understood that on all marginal business the right was reserved to close the transactions at the broker's dis-

cretion when margins were near exhausted, without further notice; that subsequently the market price of cotton declined when efforts were made on the part of the brokers to communicate with the customer and demand from him further margin without success; and it was held that in consequence of this agreement under the special circumstances of the case, the brokers were authorized to close out the transactions. It will be noticed in this case, when this transaction was closed out the margin had been entirely exhausted so that the customer was indebted to the broker over $3,000. Under such circumstances the brokers were not required to carry on the transactions at their own risk when the margin had been much more than exhausted. Besides that, there was independent evidence to show that this course of business was understood, and in determining that case the court expressly said that it was determined under the special circumstances of the case which was based upon a course of business between the parties under which this right of the broker to close out the transaction was expressly recognized. Here there was a special agreement under which the plaintiff was to furnish margin when required. When called for the plaintiff had always furnished margin within an hour of the time that the call had been received. A call was sent for additional margin, but before the plaintiff had a reasonable time to comply with the demand the broker·closed out the transaction. In the Robinson Case it was the course of business thoroughly understood by the customer which justified the broker in closing out the contract.

In this case the special agreement and the course of business required that there should be a notice for additional margin before an obligation existed on behalf of the plaintiff to furnish it, and in pursuance of this agreement the notice for additional margin was given, but before the customer had an opportunity to comply with it the transactions were closed.

Under those circumstances we think the broker was responsible for the damages caused by this unauthorized closing out of these contracts, and the judgment appealed from must be therefore reversed, and a new trial ordered, with costs to the appellant to abide the event.

All concur, except PATTERSON, J., who dissents.