### ESTES v. PERKINS et al.

(Supreme Court, Appellate Division, Fourth Department. March 9, 1910.)

1. PLEDGES (§ 56*)—ENFORCEMENT—SALE OF PROPERTY PLEDGED.
   Under the common law, where property is pledged for the payment of a debt due at a certain time, if the debt is not so paid the property pledged may be sold by the pledgee on notice to the pledgor.
   [Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 152–159; Dec. Dig. § 56.*]

2. PLEDGES (§ 56*)—ENFORCEMENT—SALE OF PROPERTY PLEDGED.
   Under a contract by which stockbrokers reserved the right to sell the stock purchased for a customer at their discretion at any time if in their opinion the condition of the account warranted such action, on the customer's failure to keep up the required margins after notice of a purchase of stock, the brokers are authorized to sell the stock at their option without further notice to the customer.
   [Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 157–159; Dec. Dig. § 56.*]

Appeal from Trial Term, Erie County.

Action by George L. Estes against Erickson Perkins and others, composing the firm of Spader & Perkins. Defendants had judgment on report of the referee, and both parties appeal. Reversed.

The action was commenced on the 30th day of July, 1908, to recover damages alleged to have been sustained by the plaintiff because of the alleged conversion by the defendants on or about the 24th day of June, 1908, of 200 shares of the common stock of the Union Pacific Railroad Company, which it is claimed was the property of the plaintiff, although in defendants' possession as a pledge to secure certain indebtedness which the plaintiff was owing to the defendants.

The facts are found by the learned referee in great detail, and it is unnecessary to restate them, because it is not urged by either counsel that such findings are not supported by evidence, or that they are contrary to or against the weight of the evidence. The contention on behalf of the defendants is that such facts do not constitute a cause of action against them. The plaintiff contends that they do establish a cause of action and entitle the plaintiff to damages largely in excess of the amount awarded by the referee, and, therefore, both ask for a reversal of the judgment and for a new trial.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Charles B. Hill, for plaintiff.

Joseph G. Dudley, for defendants.

McLENNAN, P. J.    The defendants are stockbrokers doing business under the firm name of Spader & Perkins, with offices in Buffalo and Rochester, having a private telegraph wire from those places to New York and a membership in the New York Stock Exchange.    On or about the 9th day of June, 1908, the plaintiff entered into negotiations with the defendants looking to the opening of an account with them by which they were in effect to buy and sell stocks listed on the New York Stock Exchange for him, he being informed by the defendants that he would be required to keep a margin with them of from 5 to 10 per cent. of the par value of securities bought and sold by them for him. depending upon their character; and as a part of such negotiations it was arranged that the account which the plaintiff had theretofore kept or had with Bache & Co., stockbrokers in New York, should be transferred to the defendants.    From the very inception of plaintiff's dealings with the defendants, he did not keep good the amount of margin on stock which he directed to be purchased for his account, which he was informed at the beginning of the negotiations would be required of him.    However, various stocks were purchased by the defendants, and others sold by order of the plaintiff, and so notwithstanding that his payment of margin at times amounted to less than 1 per cent. of the value of the stock purchased pursuant to his orders.    With each of the purchases made by the defendants for the plaintiff pursuant to his order, what is called a confirmation notice was duly mailed to him at the address given by him to the defendants, and in each of such notices, which the referee has found constituted the contract between the parties, there was inserted the following:

"This transaction is made subject to the rules of the New York Stock Exchange and it is further understood that should we advance all or part of the purchase money, we reserve the right to sell the stock at our discretion at any time when in our opinion the condition of the account warrants such action."

On the 23d day of June, 1908, the price of Union Pacific dropped to such extent that the value of such securities held by the plaintiff exceeded the defendants' net advances by barely $200, or two-thirds of 1 per cent. of their par value, and at the close of business on that day defendants wired their representatives in New York to sell the 200 shares of Union Pacific upon the floor of the New York Stock Exchange if the price in that market went to $142 per share or lower.    Shortly after 10 o'clock on the morning of June 24th, the defendants, through their representatives, sold the 200 shares of the common stock of the Union Pacific held by them for the account of the plaintiff at $142 per share.    And, really, the claim is on the part of the plaintiff that the defendants had no right to sell such stock except upon notice to him, and notwithstanding that practically all the margin placed by him with the defendants, as he knew, had been exhausted.

Practically the only question presented by this appeal is: Had the defendants the right to sell such stock without giving notice to 'the plaintiff? In other words, did the provision of the contract above quoted authorize such sale by them without notice?

It seems to me that such is the fair meaning and interpretation of the provision of the contract above quoted. If it did not mean that such stock could be sold without notice, then it was absolutely without effect or purpose, because under the common law it is well settled that if property is pledged for the payment of a debt due at a certain time, and if such debt is not paid, the property so pledged may be sold upon notice given to the pledgor. In this case the plaintiff concededly agreed that he would put up certain moneys known as margins to entitle him to retain the title to the shares of stock which he purchased through the defendants and which presumably they held for him. He did not pay or put up such margins, and, therefore, even under the rules of the common law, the defendants had the right to sell his pledge on giving proper notice to him in order to recover or secure the indebtedness which he owed. So that, if that is the meaning and interpretation which should be given to the clause in the contract above quoted, it would have been quite as well if such clause were not added or inserted, because its addition or insertion would not change in the slightest degree the obligation incurred by the defendants under the common law. I think that the provision inserted in the contract meant that, in case the plaintiff failed to put up the margins which he had agreed to put up, the defendants had the right to sell the stock at their discretion at any time when in their opinion the condition of the account warranted such action; in other words, that nothing would have been added to such agreement by the words "without further notice."

The material facts in this case are established without dispute. The plaintiff directed the defendants to purchase 200 shares of the common stock of the Union Pacific Railroad Company, agreeing, in substance, with them that he would keep or maintain a deposit which would represent from 5 to 10 per cent. of the actual value of the stock bought and sold by them for him as quoted in the New York Stock Exchange. The plaintiff did not make such deposit or any deposit as the result of his purchase of such stock on a margin which exceeded 1 per cent., and the defendants, because of his failure to put up additional margin, assumed to sell the stock under the provision of the contract above quoted.[1]

It seems to me that, under the circumstances, the defendants had a perfect right to make such sale, and that the fair meaning and interpretation of the clause of the contract above quoted was not that the defendants should be required to give notice to the plaintiff of their intended sale. As before suggested, if the meaning of the contract entered into between the parties was that such notice of sale should be given to the plaintiff, then the whole provision of the contract is nugatory, because, as I have said, that was the rule at common law, and, therefore, no additional provision in the contract was necessary. It seems to me that the fair meaning and interpretation of the contract between the parties to this action was that, in case the plaintiff failed

to keep his margin good, the defendants at their option were entitled to sell his securities at the best price which could be received. There is no question of good faith presented by the evidence in this case, according to the finding of the referee. The whole question is involved as to what was the meaning and effect of the provision of the contract above quoted.

My notion is that such contract gave to the defendants, plaintiff having been in default as to the payment of his margin, the right to sell the stock for their own protection, and because their pledgor had neglected to make the payments which he had agreed to make in order to prevent the sale of the property owned by him.

The case of Robinson v. Crawford, 31 App. Div. 228, 52 N. Y. Supp. 560, is not in any way an authority supporting plaintiff's contention.

There is no difficult question of law involved upon this appeal. The plaintiff directed the defendants to purchase certain stocks for him, which they did, and the stock so purchased legally became the property of the plaintiff; but such purchase was made upon condition that he (the plaintiff) would keep on deposit with the defendants an amount which would save them from loss in case the stock so purchased for him and held by them for him should decline in value as quoted upon the New York Stock Exchange. The plaintiff did not advance or put up the margins contracted for and, therefore, failed to pay the indebtedness which was due and owing to the defendants, and thereupon they sold the stock which they had purchased on plaintiff's order because of his failure to place with them the margin which he agreed they should have in order that they should carry the stock. Such margin not having been paid by plaintiff, the defendants sold the stock under the provision of the contract entered into between the parties to this action which provided:

" * * * Should we advance all or part of the purchase money, we reserve the right to sell the stock (the stock in question) at our discretion at any time when in our opinion the condition of the account warrants such action."

If ever a situation could be imagined where the stock purchased by the defendants for the plaintiff might have been sold, considering the insignificant margin which he put up to protect such stock, this is one of the cases.

My conclusion is that the defendants acted within their rights under the agreement which they had entered into with the plaintiff in selling the 200 shares of the common stock of the Union Pacific Railroad Company, and that, therefore, plaintiff is not entitled to recover in this action.

I therefore recommend that the judgment appealed from be reversed, and a new trial granted, with costs to the defendants-appellants to abide the event.

Judgment reversed, and new trial ordered before another referee, with costs to the defendants-appellants to abide event. All concur.