SMITH v. CRAIG et al.

(Supreme Court, Appellate Division, First Department. June 28, 1912.)

1. BROKERS (§ 38*)—TRANSACTIONS ON MARGIN—EVIDENCE—ADMISSIBILITY.

In an action against cotton brokers for damages to plaintiff in closing out a purchase made for him on his failure to keep the account sufficiently margined, it was error to exclude evidence that, under other transactions, notice had been given plaintiff that the right was reserved by the brokers to close transactions when margins should be running out without further notice, and evidence concerning efforts made by the brokers to obtain plaintiff's address with a view to making a demand upon him for margins before selling contracts.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 31–36; Dec. Dig. § 38.*]

2. BROKERS (§ 24*)—TRANSACTIONS ON MARGIN—CONVERSION.

A stockbroker is not guilty of conversion in selling contracts of a customer on his failure to sufficiently margin his account without actual notice to him of the time and place of sale, as in the case of a pledge.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 19; Dec. Dig. § 24.*]

3. BROKERS (§ 24*)—TRANSACTIONS ON MARGIN—CLOSING OUT ACCOUNTS—NOTICE TO CUSTOMER—NECESSITY.

Under an ordinary transaction on margins, a cotton broker is not bound to give a customer actual notice and a reasonable time in which to make margins good before selling his contracts; the duty being merely to use ordinary care and reasonable efforts to give him notice.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 19; Dec. Dig. § 24.*]

Appeal from Trial Term, New York County.

Action by Joseph J. Smith against William Craig and others, partners as Craig & Jenks. From a judgment for plaintiff and from an order denying a new trial, defendants appeal. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, MILLER, and DOWLING, JJ.

John W. Boothby, of New York City (Ernest E. Baldwin, of New York City, on the brief), for appellants.

Achilles H. Kohn, of New York City (Louis B. Hasbrouck and Robert G. Starr, both of New York City, on the brief), for respondent.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

LAUGHLIN, J. [1] This is an action by a customer against a firm of cotton brokers to recover damages for a breach of a contract by which the defendants on the 10th day of September, 1909, for the account of the plaintiff, but in their own name, entered into executory contracts with other brokers on the floor of the New York Cotton Exchange, whereby they agreed to purchase 500 bales of cotton for delivery in January, 1910. On the 13th day of the same month the defendants sold the contracts for the purchase of the cotton without express authority from the plaintiff, and he brings this action to recover the difference between the highest market price of the cotton within a reasonable time after the sale of the contracts by defendants, which was fixed upon the trial as the 16th day of the same month and is not questioned on the appeal, and the price at which the defendants agreed to purchase the cotton, together with the margin deposited by the plaintiff with the defendants, less the commissions and charges due to the defendants, and the recovery has been had upon that theory. The appellants contend that the sale was authorized on account of the failure of the plaintiff to keep his account sufficiently margined, and that by a prior course of business between the parties they were relieved from demanding further margins, and that, if such demand were necessary, it was excused by the plaintiff's absence and their inability to find him at his only address in New York, which he had previously given to them and gave them on this occasion, and that the court erred in excluding evidence in support of these defenses. .

Prior to the transaction in question, and in the months of April and May the same year, the defendants had made six separate purchases and sales of cotton for the plaintiff on a marginal account. The orders were given by him in person at their office. It does not expressly appear whether the account was closed with respect to each of these transactions separately, but it does appear that on the 15th day of June, 1909, the last of these transactions was closed, and the plaintiff received a check from the defendants for the balance due. That closed his account with them, and there was no understanding as to whether or not it was expected that he would transact further business with them. With respect to each of these transactions, the usual notice of purchases and of sales was given to the plaintiff by the defendants, and each contained, among other things, a printed notice as follows:

"Please take notice that all orders for the purchase or sale of cotton for future delivery are received and executed with the distinct understanding that *actual delivery is contemplated* and the party giving the order so understands and agrees. It is further understood that on all marginal business the right is reserved to close transactions when margins *are running out* without further notice and to settle contracts in accordance with rules and customs of the New York Cotton Exchange."

It does not appear that with respect to the six prior transactions any controversy arose concerning margins, or that any sale was made on account of the plaintiff's failure to properly margin his account or to keep it so margined. There is nothing disclosed by the record other than the receipt and retention of these notices by the plaintiff to show that his attention was drawn thereto, or that he acquiesced therein, and he testified that he merely looked at the prices, which were in

writing in the body of the notices, and did not read the part of the notice herein quoted. The notices were duly offered in evidence, and excluded on objection by the plaintiff made upon the ground that the transaction in question was not connected with the former transactions, which had been closed, and that under the decision of this court in Sanger v. Price, 114 App. Div. 78, 99 N. Y. Supp. 513, the printed notice, "even if it were a part of the contract," would not relieve the defendants from giving the plaintiff some notice or demand for margins before selling the contracts.

The address which the plaintiff had given to the defendants at the time of the prior transactions was Hotel San Remo, New York, and that was entered in their book which contained a list of their customers and their telephone numbers. The plaintiff had no office or place of business in New York. After closing his account with the defendants in June, 1909, he departed from the city for the summer, and in September was visiting in Lawrence, Mass., and on the 10th · day of that month was in Boston for the day, and from there sent a telegram to the defendants, as follows:

"Buy 500 January check one thousand dollars on way.
　　　　　　　　　　　　　　"Joseph J. Smith.　12:25 P. M."

On the prior transactions with the defendants, the plaintiff had been informed that the margin customarily required was $200 per 100 bales, and that is the margin which had been required of him, and is the theory upon which he stated that he was sending the $1,000 for margins. The defendants had no knowledge or information with respect to the plaintiff's absence from the city, excepting as disclosed by this telegram. They assumed that he was their former customer, the name being the same, and they immediately executed the order and contracted for the purchase of the cotton at $.12'38 per pound, which made the aggregate purchase price $30,950. The next morning the defendants received a letter from the plaintiff, written from Boston the day before, inclosing a draft for $1,000, which they were requested to place to his credit, and confirming his order by telegram, and giving his name and address as they had it in their book of customers, in order that they might know who he was. After sending the telegram and letter, the plaintiff left Boston about 4 o'clock in the afternoon and returned to Lawrence, where he remained until about noon on the 14th of September, when he went to Boston and boarded a train for New York, where he arrived at 10 o'clock that evening. In the meantime he knew that the defendants had no address by which they could communicate with him, other than Hotel San Remo. He made no inquiry, and he had no information, with respect to whether the order had been executed, or the state of the market, until he returned to New York. The day after the defendants made the contracts for the purchase of the cotton was Saturday, and the highest market price of cotton for January delivery was $.1240, and the lowest $.1225. On Monday the 13th the highest market price was $.1217, and the lowest $.1205. After endeavoring to communicate with the plaintiff by telephoning him at Hotel San Remo, with a view to de-

manding further margins and when his margins were reduced to about $150, the defendants sold the contracts on the Exchange at the market when it was $.1207 per pound for the cotton. On the day the defendants made the contract for the purchase of the cotton, they sent the usual notice by mail to the plaintiff at the Hotel San Remo, and on the day they sold them they wrote him at that address, informing him of the fact and of the price at which the sale was made, and that, before selling, they had endeavored to get into communication with him at the hotel and at Boston. These notices were not forwarded to the plaintiff from the hotel, and were received by him there when he returned. The plaintiff testified on direct examination that on his return to the hotel he also received "some other papers" from the defendants, but no letter or notice calling on him for margins, or stating that his account would be closed out, and that "no message of any such kind" was delivered to him at the hotel. Upon the trial, counsel for the defendant conceded that they did not succeed in getting into communication with the plaintiff before selling the contracts, but claimed that they made every reasonable effort to do so. The court ruled broadly that it was absolutely incumbent upon the defendants to show actual notice to the plaintiff demanding further margins before they were relieved from carrying the contracts longer. The defendants endeavored to show by the testimony of one of their employés that they made repeated efforts to communicate with the plaintiff by telephone at the Hotel San Remo prior to the closing of his account, but the evidence was excluded under a broad ruling that unsuccessful efforts in that regard would not avail the defendants, and they duly excepted. Thereupon counsel for defendants offered to show by the witness that they were unable to get at the hotel any address at which they could communicate with the plaintiff, and by another witness that, on attempting to telephone to the plaintiff at the hotel, the information was received that he was absent and that his address was not known there; and offered generally to show the purpose for which these efforts to communicate with him at the hotel were made. This evidence was also excluded upon the theory that the defendants should have ascertained before executing the order where they could communicate with plaintiff should that become necessary.

It does not appear that the attention of the learned court was drawn to the fact that these were made executory contracts, and that the defendants held authority in pledge. We think that the court erred in excluding the notices with respect to the prior transactions between the parties, and the evidence with respect to the efforts made by the defendants to obtain the address of the plaintiff, with a view to making a demand upon him for margins before selling the contracts. The theory upon which the evidence with respect to the prior transactions was excluded was that the reservation in the notices of purchases and sales of the right to close transactions when margins are running out "without further notice" implies that some notice that the margins are running out is required, as was stated in the opinion of this court in Sanger v. Price, supra, and the theory upon

which the evidence with respect to the efforts to communicate with the plaintiff was excluded was that the rule applicable to the relation of pledgor and pledgee requiring actual notice to redeem before selling the property pledged (Stearns v. Marsh, 4 Denio, 227, 47 Am. Dec. 248; Garlick v. James, 12 Johns. 146, 7 Am. Dec. 294; Strong v. National Mechanics' Bkg. Ass'n, 45 N. Y. 718; Treadwell v. Clark, 114 App. Div. 493, 504, 100 N. Y. Supp. 1; affirmed 190 N. Y. 51, 82 N. E. 505; Clappe v. Taylor, 125 App. Div. 605, 109 N. Y. Supp. 1072; Mullen v. Quinlan & Co., 195 N. Y. 109, 87 N. E. 1078, 24 L. R. A. [N. S.] 511) is inapplicable here, and that, therefore, all unsuccessful efforts in that regard were wholly immaterial. We do not now rule that there was such connection between the former transactions and the one in question that the provisions quoted from the notices constituted a part of the contract with respect to this transaction and may be read into it, either as matter of law, or that it became a question of fact for the jury (see Robinson v. Crawford, 31 App. Div. 228, 52 N. Y. Supp. 560, Kellar v. Halsey & Co., 202 N. Y. 594, 95 N. E. 634, and Estes v. Perkins, 137 App. Div. 367, 121 N. Y. Supp. 714), but we are of opinion that the evidence was admissible, and that it had a direct bearing on the question as to whether, in view of all the circumstances, the efforts of the defendants to demand further margins of the plaintiff were sufficient, for the jury might find that from the former course of business the plaintiff should have known that it was incumbent upon him to be in touch with his hotel in New York, so that, if the defendants endeavored to reach him there, they would be able to ascertain where he was. The contract in question was made in the light at least of the former dealings between the parties, and the plaintiff relied upon them in determining the amount necessary to send to open the marginal account. We are also of opinion that the evidence with respect to the efforts of the defendant to communicate with the plaintiff should have been received.

[2] The defendants held no property in pledge for the plaintiff, and in selling the contracts for the purchase of cotton without giving him actual notice of the time and place of sale they were not guilty of conversion (Dos Passos on Stockbrokers & Stock Exchanges, p. 193, note 1; Corbett v. Underwood, 83 Ill. 324, 25 Am. Rep. 392), but they would if they held the cotton in pledge (Content v. Banner, 184 N. Y. 121, 76 N. E. 913, 6 Ann. Cas. 106; Moore v. Rodewald, 142 App. Div. 741, 127 N. Y. Supp. 725; Small v. Housman, 142 App. Div. 760, 127 N. Y. Supp. 500). In the case of a pledge, the pledgee, if unable to give the notice, is not in jeopardy, for he may institute judicial proceedings to foreclose his lien, in which constructive notice would suffice; but the only remedy for inability to demand more margin is, and must be, the right of the brokers to protect themselves by closing out executory contracts, and thus protecting themselves against further loss.

[3] The defendants' only obligation was to give the plaintiff notice to keep his margin good. We are of opinion that the defendants were not obliged at their peril to find the plaintiff and to give him

actual notice and a reasonable time to make the margins good before selling the contracts. Their duty in that regard, in the circumstances disclosed by the record and already stated, would, I think, be performed by the exercise of ordinary care and reasonable efforts to give him notice. See Leiter v. Thomas, 110 App. Div. 879, 97 N. Y. Supp. 121, and City Bank of Racine v. Babcock, Holmes, 180, Fed. Cas. No. 2,741, Dos Passos on Stockbrokers and Stock Exchanges, p. 349, which may not be in accord with the decisions cited in the case of a pledge. If the evidence which was excluded had been received, it might appear, and counsel assured the court that it would appear, that the inability of the defendants to give the plaintiff notice that further margins were required was owing to his failure to give them an address at which he could be found, or from which his whereabouts could be ascertained.

It follows that the judgment and order should be reversed and a new trial granted, with costs to appellant to abide the event. All concur.