JOSEPH J. SMITH, Appellant, *v.* WILLIAM R. CRAIG et al., Copartners under the Firm Name of CRAIG & JENKS, Respondents.

Contract — pledge — sale of cotton bought by brokers for customer upon exhaustion of margin — action against brokers for loss suffered by customer — evidence — notices to customer that cotton would be sold when margins were exhausted — erroneous exclusion of evidence relating to prior transactions between customer and brokers — questions for jury.

1. The general rule as between pledgor and pledgee in regard to giving notice of the time and place of selling the property pledged is subject to such other or different agreement relating thereto as may be made by them. They may agree upon a prescribed notice or dispense with any notice relating thereto. Such agreement may be express or it may be found in the surrounding circumstances or in the course of dealing of the parties.

2. Defendants bought cotton on a margin for plaintiff upon his order on September tenth, which was Friday. On Saturday the price of cotton declined and on Monday, the thirteenth, further declined. On that day, plaintiff's margin having been substantially exhausted, defendants sold the cotton at a loss and sent to plaintiff's place of residence the following statement: "We enclose herewith statement of 500 bales of January cotton closed out to-day at 12.07. We endeavored to reach you this morning at the hotel here and also in Boston for instructions on your opens, but were unable to do so, and when January touched 12.05 the first time the market looked extremely weak with every appearance of breaking badly, and we accordingly placed an order to sell, the execution being made at 12.07." Defendants had on previous occasions transacted business for plaintiff by buying cotton on a margin and had on such occasions mailed plaintiff at the hotel residence given by him a notice which contained this clause: "It is further understood that on all marginal business the right is reserved to close transactions when margins *are running out* without further notice and to settle contracts in accordance with rules and customs of the New York Cotton Exchange." The plaintiff admits that he received these several statements, but asserts that he did not read them except to look at the price therein stated for which the cotton was purchased or sold. *Held,* that evidence of the circumstances connected with these

transactions should have been received and it should have been left to the jury to determine whether the plaintiff had agreed with the defendants that in case his margins were running out they could sell his contract without notice to him of the time and place of such sale.

*Smith* v. *Craig*, 151 App. Div. 648, affirmed.

(Argued April 29, 1914; decided June 2, 1914.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered October 25, 1912, reversing a judgment in favor of plaintiff entered upon a verdict and granting a new trial in an action to recover for an alleged breach of contract. The reversal was upon questions of law only, the facts having been examined and no error found therein.

The facts, so far as material, are stated in the opinion.

*Achilles H. Kohn, Louis B. Hasbrouck* and *Robert G. Starr* for appellant. The defendants had no right to sell the cotton which they, as brokers, had bought for the plaintiff without notice to him and demand upon him for additional margin, and whatever unsuccessful efforts the defendants may have made to give this notice or make this demand will not avail them. (*Content* v. *Banner*, 184 N. Y. 121; *Small* v. *Housman*, 208 N. Y. 115; *Strong* v. *Nat. M. B. Assn.*, 45 N. Y. 718; *Stearns* v. *Marsh*, 4 Denio, 227; *Garlick* v. *James*, 12 Johns. 146; *Treadwell* v. *Clark*, 114 App. Div. 493; 190 N. Y. 51; *Knapp* v. *Alvord*, 10 Paige, 205; *Bradford* v. *Kimberly*, 3 Johns. Ch. 431; *Muller* v. *Pondir*, 55 N. Y. 325; *Nagle* v. *McFeeters*, 97 N. Y. 196.) The notices of purchases and sales sent to the plaintiff in April, May and June were properly excluded. (*Bonynge* v. *Field*, 81 N. Y. 159; *Sanger* v. *Price*, 114 App. Div. 78.)

*Ernest E. Baldwin* and *James D. Fessenden* for respondents. Effort to give notice, though unavailing,

if deemed reasonably diligent by the jury, was the full measure of any duty on the broker precedent to closing out. (*N. Y. Bank Note Co.* v. *Hamilton Co.*, 180 N. Y. 292; *Arkansas Smelting Co.* v. *Belden Co.*, 127 U. S. 379; *Evansville Bank* v. *Kauffman*, 93 N. Y. 273; *Campbell* v. *Wright*, 118 N. Y. 602; *Markham* v. *Jaudon*, 44 N. Y. 245.) The court erred in refusing to admit in evidence the confirmation slips and notices sent by the defendants to the plaintiff in his various marginal transactions with them during April and May preceding, and also the one in the transaction complained of, and the terms on which those transactions were made. (*Robinson* v. *Crawford*, 31 App. Div. 225; *Estes* v. *Perkins*, 137 App. Div. 367; *Belger* v. *Dinsmore*, 151 N. Y. 166; *Mills* v. *Weir*, 82 App. Div. 396; *Tewes* v. *North German Lloyd S. S. Co.*, 186 N. Y. 151.)

CHASE, J. The defendants are cotton brokers in the city of New York. The plaintiff, who at the times hereinafter mentioned had no business, and no residence other than at the San Remo Hotel, in the city of New York, became a customer of the defendants in April, 1909. On April 13 the defendants, at plaintiff's request, purchased one hundred bales of cotton on the Cotton Exchange for October delivery and for the plaintiff's account. Two days afterwards the contract was sold at a profit. Five other purchases of cotton for future delivery were made by the defendants for the plaintiff's account, and each in turn was sold for his account. The last of·said six transactions was closed June 15, 1909. The plaintiff gave to the defendants a margin of $200 for each one hundred bales of cotton purchased for him, and stated that his address was San Remo Hotel, New York city. On September 10, 1909, the plaintiff being in Boston, telegraphed the defendants as follows:

"Buy 500 January Check one thousand dollars on way.     JOSEPH J. SMITH   12.25 P. M."

At about the same time he wrote the defendants a letter as follows:

" Confirming my wire of to-day to buy for my account Five hundred (500) bales of January cotton at the market I enclose herewith draft for One thousand ($1,000) dollars which please place to my credit, and oblige,

"Yours very truly,

" JOS. J. SMITH,

" Hotel San Remo, New York, N. Y."

The defendants received the telegram and without waiting for the letter and the draft entered into a contract with a fellow-member of the Cotton Exchange to purchase five hundred bales of cotton to be delivered in January, for which they promised to pay $30,950. September 10th was on Friday. On Saturday the market price of cotton declined and on Monday (September 13th) further declined. The plaintiff's margin having been substantially overcome, the defendants sold the plaintiff's contract at a loss to him of $850, and sent to him at the San Remo Hotel a letter, of which the following is a copy: " We enclose herewith statement of 500 bales of January cotton closed out today at 12.07. We endeavored to reach you this morning at the hotel here and also in Boston for instructions on your opens, but were unable to do so and when January touched 12.05 the first time, the market looked extremely weak with every appearance of breaking badly, and we accordingly placed an order to sell, the execution being made at 12.07. Trusting our action is satisfactory."

It is a well-settled general rule, frequently repeated, that one holding collateral security for a debt which a pledgor owes him may sell the collateral and apply the proceeds upon the debt upon giving reasonable notice to the debtor. (*Markham* v. *Jaudon,* 41 N. Y. 235; *Content* v. *Banner,* 184 N. Y. 121; *Small* v. *Housman,* 208 N. Y. 115.) The important question in this case is

whether the defendants had the right to sell the cotton contract under the circumstances disclosed in the record. The respondents urge that the contract made in behalf of the plaintiff was executory, and that the relation of pledgor and pledgee did not exist between the parties to this action, and that, therefore, actual notice of sale of the contract was not required to be given to the plaintiff, and they cite as authority for such contention the case of *Corbett* v. *Underwood* (83 Ill. 324).

We do not think that there is a sufficient basis for the claimed distinction between the contract in this case and one where certificates of stock are held by a pledgee as collateral. An assignment of a contract for the delivery of cotton on a future day as collateral operates in equity as a contract for a pledge and the lien attaches to the cotton as soon as it comes into existence and possession under the contract. It should be treated before the day fixed for the delivery of the cotton as a contract for a pledge and after such date as an actual transfer of the thing sold. It appears from the record in this case that such contracts are treated as evidence of title of the property therein described. The contract in this case for the delivery of five hundred bales of cotton in January, although executory, was among other things for the express purpose of being transferred directly or indirectly by further contracts. It constituted the evidence of a right defined by the terms of the contract itself. It was assignable and transferable. It is not only shown that it was made to be assigned and transferred, but the defendants held it subject to sale and did sell it. The only question in dispute is, whether the sale should have been made without notice to the plaintiff. It is the sale of such contract that constitutes the plaintiff's alleged cause of action.

The particular form of selling the contract does not appear by this record, neither is it of material consequence in the decision of this appeal. It may have been

by a direct sale of the contract or by some other form of sale in the nature of a set off pursuant to the rules and practice of the Cotton Exchange.

In the agreed statement of facts the parties stipulate that the defendants closed out and disposed of said contract for said five hundred bales of cotton upon the floor of the Cotton Exchange. The contract, although executory, was an actual existing contract, enforceable as such. The general rule is that an executory contract, not necessarily personal in its character, which can, consistently with the rights and interests of the adverse party, be sufficiently executed by the assignee, is assignable in the absence of agreement in the contract. (*Quinn* v. *Whitney*, 204 N. Y. 363; *N. Y. Bank Note Co.* v. *Hamilton B. N. E. & P. Co.*, 180 N. Y. 280.)

The plaintiff's interest in the contract for the delivery of cotton at a particular price and time was a clearly defined and enforceable right held by the defendants as collateral to their undertaking in his behalf and for his benefit. It would ripen into a technical pledge of the cotton and the parties should be treated as pledgor and pledgee the same as they are treated in the case of a contract for the purchase of stocks or bonds even during the interim between the contract of purchase and the actual delivery of such stocks and bonds.

The general rule as between pledgor and pledgee in regard to giving notice of the time and place of selling the property pledged is subject to such other or different agreement relating thereto as may be made by them. They may agree upon a prescribed notice or dispense with any notice relating thereto. Such agreement may be express, or it may be found in the surrounding circumstances or in the course of dealing of the parties.

The defendants in their answer allege that " The plaintiff employed the defendants, who were members of the New York Cotton Exchange, as brokers, to enter into certain contracts upon the said Exchange, and pursuant

to its rules and by-laws, to purchase five hundred bales of cotton at the market price, deliverable in the month of January, 1910, for his account, and deposited with the defendants $1,000 as margin to secure the defendants upon said contracts against the fluctuations of the market, and agreed to keep with defendants a sum of money as margin on said contracts at all times, equal to the difference between the purchase and the market price of raw cotton, and agreed, and it was the course of business between the defendants and the plaintiff, who had on previous occasions employed the defendants to enter into contracts on said Exchange for the purchase and sale of cotton, that the defendants should have the right to close said contracts when the margin deposited by the plaintiff with the defendants was running out, without further notice, and that he would pay the defendants the difference, if any, between the purchase and selling price less the amount of margin advanced."

The defendants in their efforts to establish such defense have shown that the plaintiff was in their customers' room nearly every day from the 13th of April to the 15th of June, 1909, and during that time employed the defendants on six different occasions on an advance of margin, to make purchases of cotton for future delivery for his account and during the same time made six sales of cotton for future delivery representing the same amount of cotton so purchased for his said account.

On the day of each of said purchases and sales defendants mailed to the plaintiff a confirmatory statement addressed to the San Remo Hotel, on each of which statements was printed the following: " Please take notice that all orders for the purchase or sale of cotton for future delivery are received, and executed with the distinct understanding that *actual delivery is contemplated* and the party giving the order so understands and agrees. It is further understood that on all marginal business the right is reserved to close transactions when margins *are*

*running out* without further notice and to settle contracts in accordance with rules and customs of the New York Cotton Exchange."

The plaintiff admits that he received these several statements, but asserts that he did not read them except to look at the price therein stated for which the cotton was purchased or sold. Each of these statements was offered in evidence. They were each objected to upon the ground that they related to a transaction that had been closed and on the further ground that the notice therein contained would not relieve the defendants from giving the plaintiff notice that his margins were running out. They were excluded and an exception taken.

If the parties to the transaction had entered into a formal agreement as to their marginal dealings in the language of the printed notice on the statements offered in evidence we are of the opinion that such agreement would be a complete defense to the plaintiff's alleged cause of action. Under such agreement the words " further notice " include any and all notices other than the notice contained in the agreement itself. The agreement was intended to give to the defendants the right to close the transaction without notice and at any time when the margins paid by the plaintiff were in fact running out. The decision in *Sanger* v. *Price* (114 App. Div. 78) is based upon the special agreement between the parties in that case. Plaintiff's business with the defendants in September grew out of his prior business relations with them. The plaintiff's contract with the defendants must be considered in connection with such prior transactions. He testified that he signed the letter in his full name and gave his address as the Hotel San Remo so that the defendants might know that it was the same person with whom they had transacted business prior to the summer vacation. The transactions ending with the plaintiff's going to New England for the summer were resumed in anticipation of his return to New York at the close of his

summer outing.    We are of opinion that the court should have received the statements in evidence in connection with the other facts and circumstances relating to the transactions between the parties in April, May and June, and that it should have been left to the jury to determine whether the plaintiff had agreed with the defendants that in case his margins were running out they could sell his contract without notice to him of the time and place of such sale.

The statements, with the printed notices thereon, received by the plaintiff after each purchase and sale, did not conclusively establish a contract between the plaintiff and defendants in their marginal dealings in cotton, but they were evidence to be considered in connection with the testimony of the plaintiff — the history of the transactions between the parties before the summer vacation — and the facts connected with the particular transaction out of which the plaintiff's alleged cause of action arose, for the purpose of determining the intention of the parties in connection with such marginal dealings. (*Keller* v. *Halsey*, 202 N. Y. 588, 597.)

The Appellate Division was right, therefore, in reversing the judgment of the Trial Term and granting a new trial.

The order should be affirmed and judgment absolute ordered against the appellant on the stipulation, with costs in all courts.

WILLARD BARTLETT, Ch. J., WERNER, HISCOCK, CUDDEBACK and CARDOZO, JJ., concur; MILLER, J., not sitting.

Order affirmed, etc.