MARY C. PORTER, Appellant, *v.* WILLIAM M. PARKS et al., Respondents.

When one dealing with the apparent owner of property has actual notice of title in another, he can claim no other or greater interest therein than the apparent owner claimed the right to or proposed to transfer.

Plaintiff was the owner of fifty shares N. Y. C. stock; she delivered the certificate therefor, assigned in blank, to P., to be used by him as security in stock transactions. P. transferred the certificate to defendants as security to cover any balance upon his dealings in stock with and through them, notifying them that plaintiff was the owner. One S. acted as broker for P. in the purchase and sale of stocks, having written authority to act on P.'s behalf in any stock transactions .with defendants. Subsequently by direction of S. defendants sold the stock in question. In an action for the conversion thereof,—*Held* (GROVER, J., dissenting), that the power to S. did not include any authority to sell this stock or to interfere with the contract between the principals. That defendants having notice, P. could confer no power of sale upon them, save as pledgees, in the manner and upon the notice required by law, and having sold without such notice they were liable.

(Argued April 26, 1872; decided June 4, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, affirming a judgment in favor of defendants entered upon an order of the court at circuit directing a nonsuit.

The action was for the conversion of fifty shares of the stock of the New York Central Railroad Company.

Plaintiff owned and held the certificate for the stock. She executed a blank assignment and power of attorney to transfer indorsed thereon, and delivered the same to William C. Porter to be used by him as a margin or security in stock transactions. He arranged with defendants to purchase and sell stocks for him, and placed this stock with them as collateral security against loss in the contemplated operations, or, as the witness expressed it, as a "basis" or "margin." Said Porter employed Henry Stanton to act for him and direct in the buying and selling of stock, giving him a written authority of which the following is a copy:

"Messrs. Wm. M. Parks & Co.:

"GENTS.—I herewith authorize Mr. Henry Stanton to act for me on my behalf in any stock transactions with your firm for my account; herein ratifying and confirming the same as if done by myself.

              "Respectfully yours, etc.,

                        "W. C. PORTER."

Porter told both defendants and Stanton that plaintiff was the owner of this stock. Subsequently defendants under the direction of Stanton sold the stock at private sale without any notice to Porter or plaintiff. The stock was sold at 154, it subsequently rose to 218. At the close of the testimony the court directed a nonsuit.

*A. R. Dyett* for the appellant.

*F. F. Marbury* for the respondents. Where one vests another with the apparent ownership of the stock, a *bona fide* vendee or subsequent holder will be protected in his title against the original owner. (*Bay* v. *Coddington*, 5 Johns. Ch., 54; *Saltus* v. *Everett*, 20 Wend., 280; *Fatman* v. *Lobach*, 1 Duer, 354; *Leavitt* v. *Fisher*, 4 id., 1; *Commercial Bk., Buffalo*, v. *Kortright*, 22 Wend., 348; see also, *Pease* v. *Gloahec*, Transcript of May 29, 1869, pp. 6, 7,

Privy Council Case.) Defendants having advanced money on the security of the stock are *bona fide* holders. (*Saltus* v. *Everett*, 20 Wend., 280; *Fatman* v. *Lobach*, 1 Duer, 354; *Leavitt* v. *Fisher*, 4 id., 1; *Commercial Bk.*, *Buffalo*, v. *Kortright*, 22 Wend., 348; see also *Pease* v. *Gloahec*, Transcript of May 29, 1869, pp. 6, 7; *Felt* v. *Heye*, 23 How. Pr. R., 360.)

Allen, J. There was evidence upon which the jury might have found, not only that the New York Central stock was the property of the plaintiff, and was placed by her brother, as a "margin," or a security to cover any balance that might be due from him to the defendants upon his dealings in stock with and through them as his brokers, but that the defendants at the time of the hypothecation of the stock had notice and knowledge of the plaintiff's ownership. It is true, there was evidence in conflict with the testimony of W. C. Porter on that subject, but it was for the jury to determine where the truth lay.

While the defendants say they never heard of the plaintiff until after the sale of the stock and the demand preparatory to bringing this action, it is a circumstance of some importance that they held for security the certificate for the stock in the name of the plaintiff, with her blank indorsement thereon, and treated the stock as a pledge, and not a part of the stock in which Porter was dealing. While, therefore, the law is well settled, as claimed on behalf of the respondents, that where a party, by his own act and consent, has given to another the evidence of ownership and the apparent *jus disponendi* of property, a *bona fide* purchase from the apparent owner, or one who advances money or incurs responsibilities on the faith of the title, will be protected, it is equally well settled that if the party dealing with the apparent owner has actual notice of the rights of the true owner, he acquires no better title than the transferor or apparent owner can lawfully convey.

In other words, the purchaser or pledgee is not a *bona fide*

purchaser as against the rightful owner, and is not within the protection of the rule invoked by the defendants, and must rely upon the actual, rather than the apparent, authority of the individual with whom he deals for his protection.

With a verdict of the jury, then, that this particular stock was the property of the plaintiff, and was by her authority pledged or hypothecated as a security for advances in the purchase of stocks for account of W. C. Porter, with notice to the defendants that the stock was owned by the plaintiff, the most that the defendants could claim would be as pledgees in good faith of the stock for the debt of W. C. Porter, with all the rights which would result from such a pledge.

With actual notice of the plaintiff's title, the defendants could not claim any other or greater interest than the holder of the certificates of the stock with the blank indorsement of the owner claimed the right or proposed to transfer.

The pledge of this stock for the purpose named was a transaction between the defendants and W. C. Porter, and although it was to recover advances for, or balances due upon stock transactions, that is, in the purchase and sale of stocks, it was not one of the stock transactions contemplated, a buying and selling of the stock.

The property of the plaintiff may, for the purposes of this appeal, be regarded as rightfully pledged for the debt of her brother or for any balance of indebtedness that might exist against him, but this was not a sale of the stock to the defendants, or an authority to them to sell it, except as pledgees and in the manner and upon the notice required by law. The consent of the plaintiff, upon the case assumed, and which the jury might have found upon the evidence, was at the most to give the defendants the rights of pledgees, and she thereby became a surety by pledging her property for her brother, and is entitled to be dealt with as a surety, at least to the extent necessary to protect her against the total loss of her property, except by the means and in the manner prescribed by law. It is as if she in person had deposited the stock with the defendants in pledge. Her brother acted by her authority

in the transaction, with notice of the agency to the defendants.

Now the authority of Mr. Stanton did not and could not, in the nature of things, extend to the sale of this stock as one of the "stock transactions" of Mr. Porter with the defendants, or both Stanton and the defendants, assuming the truth of Mr. Porter's testimony, knew that it did not. Neither contemplated or could have contemplated any dealings with this stock.

The learned judge at Circuit refused to submit any questions to the jury, and declared, as matter of law, that Mr. Porter, in authorizing Mr. Stanton to act for him in all his transactions, authorized him to sell Miss Porter's stock, and that the defendants were entitled to a nonsuit. In other words, the ruling was that Miss Porter could be deprived of her stock which she had pledged to secure any indebtedness that might exist against W. C. Porter in his "stock transactions or dealings" with the defendants, under an authority to a stranger from Mr. Porter to act for him in such stock transaction. Now, there are several answers to this:

1. The power does not include within its terms, upon any reasonable interpretation, an authority to interfere with the sureties held by the defendants, or with any stock, except such as should be bought or sold for account of the principal, the speculative transactions.

2. The principal had no authority to sell the stock, and both Stanton and the defendant knew it, and, therefore, he could not confer the power upon another.

If there is any ambiguity in the phrase, "any stock transactions with your firm for my account," in the authorization of Mr. Porter to Mr. Stanton, a reference to the circumstances, under which and the purpose for which the authority was given, is proper to ascertain the intent and understanding of the parties, and determine the extent of the power conferred.

Without laying stress upon the suggestion, true in fact, that the disposal of the stock of Miss Porter, pledged with her

assent as a security for the debts of her brother, could, in no
just sense, be regarded as a stock transaction with the defend-
ants for the brother's account, the fact exists that the pledge
was perfect, and the contract, under which it was made, was
complete by the deposit of the stock with, and the delivery
of the certificate to the defendants upon the terms and con-
ditions agreed upon by the parties in person.

Nothing was left to be done in respect to it in the future,
and there was no occasion for the intervention of a third per-
son, or for any agency of any kind. The defendants had
actual possession of the stock as bailees for a special purpose,
and the rights of the parties were as definitely settled as if
the contract had been reduced to writing, and every legal
incident of a contract of pledge had been incorporated in the
instrument. The one had parted with his property, and the
other had accepted it as a security for the engagements of the
pledgor, and upon terms and conditions well defined in the
law and understood by the parties. The defendants had the
right at any time to close the dealings and call for a payment
of any balance that might be due them, and, upon default in
the payment, to sell the stock at public auction upon reason-
able notice. ( *Wilson* v. *Little*, 2 Comst., 443 ; *Stearns* v.
*Marsh*, 4 Den., 227.)

Both parties had deliberately assented without the inter-
vention of an agent to the terms of the pledge, and had
agreed to enter into certain transactions in which the pledgor
would be the debtor of the defendants, and while the pledge
was to secure the payment of such indebtedness, the transac-
tions contemplated were the purchase and sale of stocks with
a view to a profit. The purchases and sales were to be made,
not at the discretion of the defendants, the brokers, but at the
discretion and under the direction of the dealer; and as he
was a resident of Albany, while the dealings were to be in
New York, he could not in person assume the direction of
specific purchases and sales to advantage, and hence the occa-
sion for designating a third person to represent him and act
for him in those transactions; and one was selected, who was

to share in the venture, although his interest was not disclosed to the defendants. The contract of pledge had been completed, and it needed not the assent of any one to enable the defendants to assert their rights as pledgees; but in the "stock transactions" contemplated, the intervention of the dealer, Porter, or some one in his behalf, was necessary to control and direct them, to direct what stocks should be bought and when, and at what price, and to direct the sales of such as should be bought. The authorization was legitimate and necessary for this purpose, and the words employed to confer the precise authority required were apt and proper, and were entirely inapt to authorize the remodeling and reformation of a contract already concluded between the principals for another purpose. It would be an unwarrantable perversion of the office of interpretation and a disregard of the well expressed intent of the parties to construe this note of authorization as a warrant to the agent to undo what the principal had well done, and make an entire new contract for him in a matter not touching the "stock transactions" contemplated, but properly pledged, for a special purpose.

My individual opinion is that if Porter, the principal, had been the owner of the stock, the result would be the same, and the only rights the defendants would have had would have been as pledgees, and that Stanton under the terms of his power would have had no authority over it. He could only direct the purchase and sale of stocks for speculative purposes. But pledged, as we must assume it was, upon the evidence, and the request and refusal to submit the question to the jury as the property of Miss Porter, it is quite clear that it could only be treated as a pledge. It was, therefore, a conversion of the stock to sell it without notice to the pledgor. (*Cortelyou* v. *Lansing*, 2 C. C. in E., 199; *Wheeler* v. *Newbould*, 16 N. Y., 392; *Wilson* v. *Little*, 2 Comst., 443.) There is no claim or pretence that this is anything but a naked pledge, without any special contract or provision for a sale of the pledge or a waiver of demand and notice; and in view of the testimony of the defendants on the last trial, they

can hardly claim with any semblance of truth that there was any special agreement taking this pledge out of the ordinary rules of law applicable to pledges in giving them as pledgees any extraordinary or unusual powers over the stock.

They did not exercise any such power if it was given, but they transferred it by direction of Stanton without any authority. This leads to a reversal of the judgment.

Assuming that the case will not be changed upon a retrial, the defendants may establish their rights as pledgees as against the plaintiff, and in such case will be entitled to be allowed any balance that may be due them upon the dealings of Porter, for whose debt the stock was pledged, and the plaintiff will be only entitled to the difference between the value of the stock at the time of the conversion, which was either at the time of the sale or of the demand of the stock and refusal to deliver the same, and such indebtedness.

Whether the defendants shall be allowed the charges in excess of the legal rate of interest for the money advanced to Porter, cannot be determined here. The judgment must be reversed and a new trial granted.

Church, Ch. J., Folger and Rapallo, JJ., concur.

Grover, J., dissents.

Peckham, J., does not vote.

Judgment reversed.