### MOORE v. RODEWALD et al.

(Supreme Court, Appellate Division, First Department. February 17, 1911.)

1. PLEDGES (§ 31*)—BROKERS—MARGINS—SALE—NOTICE.

Upon a margin account, where the relation of pledgor and pledgee exists, the sale of securities by brokers without notice to the pledgor of the time and place of sale constitutes a conversion, in the absence of an agreement dispensing therewith.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. § 86; Dec. Dig. § 31.*]

2. PLEDGES (§ 6*)—BROKERS—MARGINS—NOTICE—LIEN.

Where plaintiff intrusted her husband with her securities to use for margins upon his speculative account with defendants, which fact was known to defendants, and the margins were used up and her husband could furnish no more, but plaintiff knew and acquiesced in the specula-

tion and such use of her securities, the defendants had a valid lien thereon for her husband's indebtedness, which they could satisfy by sale, after notice to her.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. § 16; Dec. Dig. § 6.*]

3. PLEDGES (§ 36*)—BROKERS—MARGINS—PLEADING—PROOF.

In an action against brokers for converting securities belonging to plaintiff, pledged by her husband with her consent for his account, which fact was known to defendants, where plaintiff's cause of action rested solely upon absence of any lien of defendants, and the plaintiff declined to amend her complaint to conform to the proof that no notice had been given her of the sale of the securities, although permitted so to do and never intimated that she had a cause of action for unlawful sale of the securities without such notice, her complaint was properly dismissed.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. § 93; Dec. Dig. § 36.*]

Appeal from Order Entered on Report of Referee.

Action by Anna E. Moore against Frederick L. Rodewald and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, MILLER, and DOWLING, JJ.

G. W. Schurman, for appellant.
G. M. Pinney, Jr., for respondents.

DOWLING, J. This action is brought to recover the sum of $130,-000, as damages claimed to have been sustained by the plaintiff for the conversion by the defendants of securities and bonds belonging to her. It appears that the plaintiff inherited certain property from her father, who was a physician at Hempstead, Long Island. She had been married in 1877 to Henry M. Moore and until then had no knowledge of business matters. Prior to her marriage she had lived with her father at Hempstead, and thereafter she resided at Yonkers and in the city of New York. Her husband had never been engaged in any business, but at one time speculated in stocks through a broker, using the securities belonging to his wife as margin for the account, and had also through her investment of $5,000 in the Yellow Pine Lumber Company secured a position therewith. This company was not successful. On November 12, 1900, Henry M. Moore, opened a speculative account with the defendants, who were stockbrokers, and deposited with them as collateral therefor a certificate for 50 shares of Delaware & Hudson stock owned by Mrs. Moore and standing in her name, the same having been indorsed for transfer by her. At that time he was given by the defendant's manager a form of letter to be signed by plaintiff, which she duly signed and gave to her husband, who delivered the same to defendant's manager on the following day. This letter is as follows:

"477 North Broadway, Yonkers, N. Y.
"Messrs. J. W. Davis & Co.—Dear Sirs: I hereby authorize Mr. H. M. Moore to use collateral standing in my name as margin.
"Yours very truly,                    Anna E. Moore.
"November 13, 1900."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The defendants acknowledged the receipt thereof, as follows:

"J. W. Davis & Co., 9 Broad Street, New York.

"November 14, 1900.

"Mrs. Anna E. Moore, Yonkers, N. Y.—Dear Madam: We have received your favor of the 13th inst. authorizing Mr. H. M. Moore to use collateral standing in your name as margin on his account. Thanking you for same, we remain,     Yours very truly,     J. W. Davis & Co."

Thereafter many deposits of stocks and bonds were made with defendants belonging to plaintiff by her husband as collateral for his account, she executing in every case the requisite transfers or powers to enable the same to be transferred. In October, 1903, plaintiff herself opened an account through her husband with the defendants for the purpose of selling certain securities owned by her, which account was kept in the name of "H. M. Moore, Special," and when the purpose sought to be accomplished thereby had been realized the account was duly closed. Mrs. Moore in March, 1904, opened in her own name an account with defendants wherein certain Delaware & Hudson stock and the rights thereunder were deposited. Although the rights were sold in March, 1904, the account was kept open until January, 1908. In it certain moneys of her own were deposited, which were received outside of any proceeds of stock sales. The plaintiff never personally maintained a speculative account with the defendants. Until November, 1907, H. M. Moore kept his speculative account active, making a profit thereon at the outset on certain transactions, which proceeds in part were deposited in the joint banking account of himself and his wife in the Fifth Avenue Trust Co., upon which account both were authorized to draw checks, and from which moneys were drawn for the purpose of defraying traveling and vacation expenses by himself and wife.

There is no question but that plaintiff knew that her stocks and bonds were being deposited with the defendants as security for her husband's account. She knew as well that he was speculating through the defendants, but her contention is that she never knew that her securities were liable to be sold for the husband's debt to defendants, and she thought they were as safe in the defendants' custody as they would have been in her own safe deposit box, where they were originally kept. It affirmatively appears, as well, that she knew what was meant by "margin" upon a broker's account, and was not entirely unversed in the ordinary methods of stockbrokers. It is equally plain upon this record that defendants knew that the securities which were deposited with them by Moore, as security for his account, were the property of his wife, and there is no claim that she ever interfered in any way with her husband's account. As early as March, 1907, from her own testimony, the plaintiff knew that the stock market was in very bad shape, and when her husband told her this, she realized as well that the securities for which she was signing powers of attorney were going to the defendants to protect her husband's account. Before she went to Hot Springs, Va., in that month she told her husband when he asked that she should sign the powers, "that pretty soon every security she had in the world would be with the defendants, and

that she did not want it so," to which he replied that "it was absolutely necessary for his protection that she should let him take the securities and put them there," and she did so.

Again in October, 1907, when her husband asked her to indorse certain shares of American Woolen stock and Chicago Eastern Illinois stock, he told her that the market was in horrible condition, that defendants were demanding collateral, and he was almost crazy. The plaintiff cried all night long before she consented to sign the powers, because he had been getting these securities "one after the other, and one after the other, and it was intensely hard to let them go," but she did so "to save him" because he told her "that he would be sold out if she did not do so." Despite everything that had been done by plaintiff to protect her husband's account, the panic became so acute that additional margin was called for by the brokers which Mr. Moore was unable to furnish. On November 4th, he called to see Mr. Rossiter, one of the defendants, who said to him, "Mr. Moore, we require 20 per cent. more margin from you." Moore replied, "There is still margin here," to which Rossiter said, "It is not sufficient, we require 20 per cent." Moore then answered, "Well, I have done all that I can do," and Rossiter said, "Then we will be compelled to sell the securities we hold," to which Moore's only reply was "I cannot help it." Thereupon the defendants proceeded to sell the collateral held by them for Mr. Moore's account, consisting of Mr. Moore's speculative stocks and of the stocks and bonds owned by the plaintiff, to defray Moore's indebtedness to them which amounted to $99,000. Everything belonging to plaintiff in defendants' possession was sold save 100 shares of Delaware & Hudson stock and 10 shares of Steel Preferred. At this time there was a comparatively small credit balance in plaintiff's personal account. Her husband having informed her of the sale of the securities, the plaintiff visited defendants' offices on or about November 7, 1907, and discussed the situation with Mr. Rossiter. She then knew the full extent of the disaster which had overtaken her, but she told him that "she did not blame her husband for what had happened but the people who had advised him." She made no complaint at that time as to anything her husband had done. Thereafter, with her knowledge, the remaining securities were received for her, by her husband, on November 8, 1907, and he put them in her safe deposit box. The receipt thereof was as follows:

"New York, Nov. 8, 1907.

"Received from J. W. Davis & Co. a/c A. E. Moore ten (10) shares U. S. Steel pfd. One hundred (100) shares Del. hud.      H. M. Moore."

Within a short time thereafter plaintiff had access to her safe deposit box, and saw these securities therein, and on January 11, 1908, she wrote the following letter to the defendants:

"301 West 108th Street.

"Messrs. J. W. Davis & Co.—Dear Sirs: Please send to the Fifth Ave. Trust Co. on Monday, January 13, a check for the entire balance of my account with you. Have it placed to the credit of Anna E. Moore, and oblige,
     "Yours truly,      Anna E. Moore.
     "N. Y. Jan. 11th."

To this the defendants replied as follows:

"J. W. Davis & Co., 100 Broadway.

"New York, Jan. 13th, 1908.

"Mrs. Anna E. Moore, New York City—Dear Madam: As requested in your favor of the 11th inst. we have to-day sent our check for $2,022.68 to be placed to your credit with the Fifth Avenue Trust Company, same being balance of your account with us with interest to date at six per cent. We have an order on our books to buy twenty shares of Borden's Condensed Milk at 100, good until countermanded. Will you kindly advise us if you wish this order canceled.          Yours very truly,          J. W. Davis & Co."

On January 31, 1908, her attorney wrote a letter to defendants containing the following clauses:

"I beg to state that I have been retained by Mrs. Anna E. Moore, wife of Mr. H. M. Moore, formerly· a customer of your firm. You will recall that Mrs. Moore previously allowed her husband to deposit with you certain of her securities to secure his account. Mrs. Moore has just been informed that without notice to her these securities have been sold. I have been employed for the purpose of bringing an action against you to compel you to reinstate these securities as they were under the terms of the pledge, with the right to redeem the same upon receipt of proper notice from you."

The defendants having declined to accede to these demands the present action was commenced. The material paragraphs of the complaint are as follows:

"Second. That the plaintiff was the owner of certain personal property, consisting of certificates of the capital stock and the bonds or other obligations of various corporations. A schedule of the same is hereto annexed, marked 'Exhibit A,' and is made a part hereof the same as if it were herein set forth in full.

"Third. That at various times between the 12th day of November, 1900, and the 23d day of October, 1907, the said stocks and bonds came into the possession of defendants and were in their possession on the said 23d day of October, 1907.

"Fourth. That the defendants at the time the said stocks and bonds came into their possession, and thereafter and until after the time herein mentioned, knew that the same were the property of the plaintiff.

"Fifth. That the plaintiff was at all of said times and now is entitled to the possesion of said personal property and has duly demanded of the defendants the return of said property to her, but the defendants have refused to return the same or any part thereof, and still so refuse and have converted said property to their own use.

"Sixth. That at the time said stocks and bonds were so converted and disposed of by defendants, the plaintiff was the owner thereof.

"Seventh. That said property was and is of the value of one hundred and thirty thousand dollars ($130,000)."

At the close of the plaintiff's case, the facts hereinbefore stated had been established among others, and it seems·clear that upon them the plaintiff had shown enough to warrant the inference, which is confirmed by the documentary evidence and by the original authorization under which the first deposit of securities was made, that the defendants received, as collateral, for Henry M. Moore's account, stocks and bonds belonging to the plaintiff to the amount in question, with knowledge that they were the plaintiff's property, and that they were deposited or pledged with them solely as security for·any balance which might be due upon that account.

It is apparent that to the extent of Moore's indebtedness to them they had a valid lien upon the plaintiff's securities which they could satisfy by a sale thereof after notice to her. It is to be noted that the plaintiff makes no accusation of fraud, deception, undue influence or bad faith against her husband in obtaining these securities from her, nor does she claim she was deceived as to the purpose for which they were to be used. She expressly testified that her husband did not deceive her, that he practiced no deception upon her, that he did not take anything wrongfully and that he had never intentionally wrongfully appropriated anything she had. Her objections to what occurred are based upon the fact that she had been kept in ignorance as to the extent of her husband's dealings with defendants, which reached as high as an indebtedness of $379,000, and that she did not appreciate that her securities were liable to be sold to satisfy his debt. Her cause of action is predicated upon the theory that the conversion of her property by the defendants occurred when they failed to replace the stock upon demand made in January, 1908. It was based upon the proposition that defendants never acquired a valid lien upon her securities, and that she was always entitled to the possession of them. That was the sole theory upon which the cause was tried before the referee and it is the sole cause of action which can be spelled out from the complaint herein. There is no allegation therein which even approximates a hint that she relies upon any unauthorized sale, or upon anything save a refusal to return her property upon demand, which was not made until January, 1908. The "sixth" paragraph does not enlarge the claim in any way, for it only fixes a time when the conversion occurred—i. e., when the demand was made—and in no way broadens or extends the cause of action, which in the final analysis rests solely upon the proposition that defendants never were entitled to the possession of the property in question, and therefore the cause of action arose when the securities were not delivered or replaced upon demand. It was never contended upon the trial that plaintiff was entitled to recover for a conversion of the securities due to their unlawful sale by the defendants, without notice to the plaintiff. At the close of plaintiff's case defendants' counsel moved to dismiss the complaint on some 14 grounds, by which it was specifically called to the attention of the referee that the plaintiff was proceeding upon this claim of a conversion due to the failure to replace the securities upon demand, based solely upon the theory that the defendants had acquired no valid lien thereupon. Plaintiff's attorney did not then nor any time thereafter, suggest that he had made out a cause of action in conversion, based upon an unauthorized sale of the securities, although the facts were all before the court. The referee then stated that he had decided to grant the motion to dismiss the complaint, on the ground that there was no proof of the cause of action set forth in the complaint, it appearing that the securities of which the plaintiff claimed she was entitled to the possession, had been delivered to the defendants by plaintiff's husband with the knowledge and expressed authority and consent of the plaintiff, to use as margin for his speculative account. He then said:

"I will add that if the plaintiff should wish to amend her complaint to conform to the proof, I will permit such an amendment if proper, and will allow proof as to the balance due, if any, on such speculative account."

An exception having been taken by plaintiff's counsel to this ruling the referee then inquired:

"Do you wish to amend your complaint to conform to the proof?"

Plaintiff's counsel replied:

"I do not make any motion in that respect."

After some colloquy not relevant to the point involved, the referee again stated:

"My decision is based on the conviction that the plaintiff has not made out a case under the pleadings in the complaint, but I have not passed on the question of whether the plaintiff would be entitled to a judgment of some sort on an amended complaint."

Defendants' counsel then interposed:

"It seems to me that the referee has granted a nonsuit with leave to the plaintiff to amend, of which she declines to avail herself."

The referee then remarked, "That is the fact." Under these conditions it is too late now to urge that although the complaint stated no cause of action in conversion, based upon an unauthorized sale of plaintiff's securities, and although plaintiff expressly declined to amend her complaint in any way to conform to the proof, that she had made out a case upon a theory neither set forth in the complaint nor presented to the referee. It will be remembered that Moore was not his wife's agent in respect to the account in question, which was solely his account, that the defendants upon the proof must have known, and did know, that the securities belonged to the plaintiff, and that under the original authorization, never revoked, and constituting the authority under which defendants received plaintiff's securities as margin on her husband's account, the plaintiff and defendants sustained the relationship of pledgor and pledgee, the plaintiff being surety for her husband to the extent of the property pledged.

This case, were the issue properly presented by the plaintiff's pleading, would come within the rule laid down in Porter v. Parks, 49 N. Y. 564. That was a case where the plaintiff owned stocks which stood in her own name and which she indorsed in blank and turned over to her brother to use as margin or security to cover any balance that might be due from him to his brokers. As in this case, the defendants had notice and knowledge of the plaintiff's ownership of the stock and it was treated as a pledge and as not a part of the stock in which the brother was dealing. The brother's agent, who had been authorized to act for him and on his behalf in any stock transactions with the brokers gave an order for the sale of the plaintiff's stock, and the same was sold without notice, either to the owner of the stock or to her brother, by whom it was deposited as margin. The court held that the agent had no authority to order the sale of the pledged stock, and, in so doing, said as well that it was a conversion of the stock to sell it without notice to the pledgor. There is no claim in this

case that notice of the proposed sale ever was given to Mrs. Moore, and her husband denies that he ever gave any instructions to sell her securities, nor had he any power so to do. It is, of course, well settled that upon a margin account where the relation of pledgor and pledgee exists, a sale of the stock by the brokers, without notice of the time and place of the sale, constitutes a conversion in the absence of an agreement dispensing with such notice or provision that otherwise disposed of the pledged property. Content v. Banner, 184 N. Y. 121, 76 N. E. 913.

Inasmuch as under the theory upon which the complaint was framed and the trial was had, the plaintiff's cause of action for conversion rested solely upon the absence of any lien in favor of defendants upon the securities in question (that being the sole cause of action to sustain which appropriate allegations are to be found in the complaint), and as plaintiff declined to amend her complaint to conform to the proof, and never contended that she had a cause of action in conversion based upon an unlawful sale of the securities in question, by the defendants without notice to her, the dismissal of the complaint by the referee was correct.

The judgment appealed from must therefore be affirmed, with costs to the respondents. All concur.