ISABEL D. CURTIS, Plaintiff, *v.* GEORGE GRAHAM THOMSON and Others, as Copartners, Doing Business under the Firm Name of MORGAN, DAVIS & COMPANY, Defendants.*

Supreme Court, Special Term, New York County, June 22, 1937.

* Affd., 253 App. Div. 806.

*Van Vorst, Siegel & Smith* [*Alexander B. Siegel* and *Arthur B. Brenner* of counsel], for the plaintiff.

*Blake & Voorhees* [*Charles H. Kelby, Tracy S. Voorhees* and *Edward I. Devlin* of counsel], for the defendants.

SHIENTAG, J.   This is an action for an accounting by a customer against a stockbroker.   The issue of whether the plaintiff is entitled to an accounting need not be considered.   A full accounting was rendered at the trial, and the question to be decided is whether upon such accounting the customer is entitled to recover anything from the broker.

Isabel D. Curtis, the plaintiff, who is now eighty-nine years old, opened an account with a predecessor firm of stockbrokers about 1906. From that time until June 1, 1929, when the defendant firm was organized, there were a number of successor firms containing some members of the prior firm or firms, and new members. Plaintiff had an account with all these firms, as did her son, Ellicott D. Curtis. The son, Ellicott, conducted all of the plaintiff's business affairs and gave orders for the purchase and sale of securities for his mother's account. He acted under a written power of attorney dated November 12, 1915, and recorded in this State in 1920. It provided, in part: " I, Isabel D. Curtis, * * * appoint Ellicott D. Curtis my true and lawful attorney * * * to manage my property and investments and to do all acts necessary or proper for the management or reinvestment of the same, and in particular to sell, assign and transfer any or all stock or shares of stock which stand or may hereafter stand in my name and for that purpose to make and execute all necessary acts of assignment and transfer * * * (and the enumeration of the foregoing specific powers shall not be deemed to exclude any other act or power which, in the judgment of the said Ellicott D. Curtis, may be necessary or proper for the management or reinvestment of my property and investments) giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as I might or could do if personally present."

Between 1920 and 1923 Ellicott in one or two instances gave instructions to the brokers to transfer securities from his mother's account to his own account, to be used as collateral for his indebtedness to the firm. This was done by the brokers, and the securities were later returned. When, in 1923, Ellicott wished to extend this practice, a member of the firm, one of the defendants herein, told him that they would have to consult counsel. This was done, and a card was prepared and presented to Ellicott with the request that he have his mother sign it. The plaintiff signed the card which stated: " June 16, 1923. Messrs. Morgan, Davis & Co. (their successors and assigns), 66 Broadway, N. Y. Dear Sirs: Until further advised by me in writing, will you kindly execute any and all orders which may be given to you by Mr. Ellicott D. Curtis for my account as to purchase and sale of securities, withdrawal of funds and otherwise. He has full authority to use my securities as collateral for his or my account, to have such securities transferred out of my name, to collect all dividends and interest thereon, and in any and every manner to act in regard thereto, and you are hereby authorized to act upon his instructions in the premises.

Yours very truly, I. D. Curtis." On the same day the plaintiff signed a regular customer's card and gave an address to which all mail should be sent.

Between June 16, 1923, and May 23, 1929, numerous transfers of securities from plaintiff's account to Ellicott's account occurred. From February, 1927, the plaintiff received a number of letters notifying her of the transfers of her securities to Ellicott's account. A letter to the plaintiff, written in February, 1927, reported the receipt of securities for her account from the Farmers Loan and Trust Company, predecessor of the City Bank Farmers Trust Company, and the immediate transfer thereof to Ellicott's account. Statements of her account with defendants, sent to plaintiff for the first seven months of 1927, showed that securities received from the Farmers Loan and Trust Company and credited to her account were transferred on the same day or a few days thereafter to Ellicott's account.

Following these various notices to plaintiff, on August 31, 1927, in connection with an audit of defendants' books, a statement of account and an attached confirmation were sent to plaintiff. She signed and returned the attached confirmation certifying to the correctness of the account, which did not contain the $250,000 worth of securities theretofore pledged. Transfers of securities from plaintiff's account to Ellicott's went on, and letters reporting such transfers were sent to plaintiff. In some instances securities were returned to the plaintiff's account. On August 31, 1928, the transaction of audit, statement and certification by plaintiff of its correctness was repeated.

The pledging transactions were continued on the same basis until May 23, 1929. Under the arrangement then existing there had been difficulty in segregating dividends and interest on securities belonging to the plaintiff and pledged in Ellicott's account. Accordingly, a new account was opened on that date, entitled the Ellicott D. Curtis Special Account, and in it during the remainder of 1929 were placed all the plaintiff's securities that had been pledged for the indebtedness due from Ellicott to the firm. The defendant firm recognized that no change of ownership was involved in the transfer of securities from plaintiff's account to the special account. The securities in that account, however, were held by the brokers as margin against Ellicott's personal account.

Two transfers of securities on May 23 and 28 from plaintiff's account to the newly-opened special account were reported to the plaintiff by letter. On May 31, 1929, the plaintiff acknowledged receipt of the statement of her account for that month. The statement showed that the securities transferred to the special

account on the twenty-third and twenty-eighth had been delivered from her account.

On June 1, 1929, the present firm was organized. It is for transactions and occurrences after that date that the plaintiff sues. On October 30, 1929, Ellicott ordered the City Bank Farmers Trust Company to deliver to the defendants certain securities held in the plaintiff's custodian account with the trust company. The defendants placed these securities in the special account upon Ellicott's instructions. The City Bank Farmers Trust Company informed the plaintiff by letter that these securities were delivered to Morgan, Davis & Co., the defendant firm. However, the monthly statement of her account which the defendants sent to plaintiff contained no record of these securities.

A transfer of $100,000 in cash from plaintiff's account to the special account occurred on December 31, 1929, and is shown on the monthly statement of account mailed to plaintiff. There had been a transfer of $100,000 from plaintiff's account to Ellicott's regular account on October 31, 1929, but this was returned on January 7, 1930.

The books of the defendant firm were audited as of August 31, 1930, and a statement of account was sent to the plaintiff with a request for certification, which the plaintiff signed and returned, representing that she believed the statement to be correct. The account did not contain the securities transferred from it and pledged for Ellicott's indebtedness, nor the $100,000 transferred to the special account on December 31, 1929. Nor was there in the plaintiff's account any of the securities transferred from the City Bank Farmers Trust Company and delivered to the defendant firm. The plaintiff had been notified of each of these transactions by letters from the defendants, by monthly statements of account, and by a letter from the trust company. She certified the account as correct in the light of such information and of what the statement showed as to the condition of her account.

During the next period from August 31, 1930, to September 17, 1931, the same course of transactions continued. On October 7, 1930, further securities were transferred from the trust company to the defendant firm and were entered directly in the special account on Ellicott's instructions. The defendants notified the plaintiff of this transaction on the same day.

September 17, 1931, substantially all the securities remaining in plaintiff's account were transferred from her account to the Ellicott D. Curtis Special Account. A letter was sent the same day, fully setting forth the transaction. It added that the securities were insufficient to make up the deficit in margin in Ellicott's regular

account and that the defendants were going to transfer $16,000 in cash from her account in order to make up the deficit. The letter further stated that this was done on Ellicott's instructions and on the plaintiff's written authority giving him full control over her account. No reply was received by the defendants, and on the next day they transferred the cash to the special account.

On March 18, 1932, securities were transferred from plaintiff's custodian account at the City Bank Farmers Trust Company to the Ellicott D. Curtis Special Account against a payment of $40,000 from the special account. The plaintiff was notified of this transaction by a letter from the defendants sent the same day. These securities were later sold for approximately $56,000.

The first sales of securities held in the Ellicott D. Curtis Special Account occurred on October 31, 1929. The defendants made the sales upon orders from Ellicott. No notice was given the plaintiff of these sales either before or after they were made; Ellicott, however, did receive notice of the sales. During the following months further sales of securities occurred, each time upon Ellicott's order. No notice of any of these sales was given to plaintiff nor was she sent statements of the Ellicott D. Curtis Special Account. The testimony is that the sales were made for the purpose of strengthening Ellicott's account.

By February 24, 1933, all the securities in the Ellicott D. Curtis Special Account had been sold, leaving a credit balance of about $520,000. The debit balance in his regular account was $500,000. In March, 1933, an audit of defendant's books was made by a representative of the New York Stock Exchange. He recommended that the cash balance in the special account should be applied against the debit in Ellicott's regular account. Soon thereafter Ellicott authorized the transfer, which was made. This left a credit balance in the special account of about $20,000.

Ellicott was superseded as sole agent for his mother, and a power of attorney running from plaintiff to her son Charles and to Ellicott jointly was executed on September 8, 1934. Charles Curtis called at defendant's office on September twenty-first of that year, exhibited the new power of attorney, and asked for copies of a few of the statements of plaintiff's account rendered for various months, in order to complete the set he had.

In April, 1935, plaintiff's account with defendants was closed by the withdrawal of all securities. In August, 1935, the present action was begun. The defendants were still carrying the Ellicott D. Curtis Special Account, the credit balance in the account at the time the action was begun being $26,608.78. The plaintiff never demanded partial restitution from the balance of this account

and it remained with defendants until March, 1936, when, with the plaintiff's written consent, it was transferred to another brokerage firm.

In the complaint originally served the plaintiff alleged only the transfer of securities from her account to the special account. At the trial the complaint was amended to include transfers of securities from vaults or other places where they were held for safekeeping as well as from the plaintiff's account with defendant. Thereupon the defendants amended their answer so as to plead the Statute of Limitations as of the date of amendment.

The defendants interposed five defenses. They are: *First,* that all the transactions set out above were authorized by the plaintiff; *second,* the defense of ratification; *third,* that there had been a complete account stated between plaintiff and the defendants; *fourth,* that plaintiff is estopped to deny the representations she made as to Ellicott's authority to use her funds and securities for his own account; *fifth,* the Statute of Limitations is set up as to all transfers of securities made prior to August 6, 1929.

1. The plaintiff contends that the card dated June 16, 1923, which is set out above, does not inure to the benefit of the present defendants since it was addressed to a differently constituted firm. (*Rieser* v. *Speyer,* 239 App. Div. 405.) That case, however, involved a contract of guaranty containing no agreement that it should run to a successor firm. Here the authorization was directed to " Morgan Davis & Co. (their successors and assigns)." In addition there is the element of practical construction by the parties. There was a change in the firm in 1926, and again in 1929. Those changes were apparent from the letterheads of the letters informing plaintiff that transfers had been made to Ellicott's accounts on the authority given to him by the plaintiff, yet the plaintiff did nothing to notify the brokers that Ellicott had no such authority. On the contrary, she represented that the authority ran to the successor firms by certifying statements of her account as regular. The defendant firm was fully justified in relying on the written authority given to Ellicott in 1923.

2. The defendants maintain that the amendment of the complaint to include the transfer of securities from the plaintiff's custodian account at the City Bank Farmers Trust Company constituted a new cause of action. Consequently, they urge that the Statute of Limitations may be interposed to such cause of action as of the date of the amendment. (*Harriss* v. *Tams,* 258 N. Y. 229.) It has been held, however, that: " If the amendment merely expanded or amplified what was alleged in support of the cause of action already asserted, it related back to the commencement of the

action and was not affected by the intervening lapse of time." (*Seaboard Air Line* v. *Renn*, 241 U. S. 290, 293.)   Such is the nature of the amendment herein.   The action is for an accounting of the moneys and securities that went into the Ellicott D. Curtis Special Account.   Whether they went into that account from the plaintiff's account with the defendants or from her custodian account at the City Bank Farmers Trust Company does not change the nature of the action for an accounting.

3. The merits of the case involve the application of familiar doctrines of agency.   The use of the plaintiff's securities to margin Ellicott's account, done with defendants' knowledge of plaintiff's ownership of the securities, would entitle her to restitution from the defendants if nothing more appeared.   Under the defenses they have interposed, however, the defendants urge various justifications for their conduct in these transactions.   We may consider first whether the securities and cash in the special account were rightfully pledged as collateral for Ellicott's indebtedness.   The property in the special account was made up of securities transferred from plaintiff's account with the defendants, cash from that account, and securities from the plaintiff's custodian account.   The initial defense, that the various transfers were authorized by the plaintiff, is clearly sufficient to sustain the pledge of securities taken from plaintiff's account with the defendants.   The card signed by the plaintiff in 1923 expressly conferred " full authority to use my securities as collateral for his or my account."   The words " my securities " must certainly refer to securities held in the plaintiff's account.   Hence their pledge was authorized and rightful.

The other assets in the special account were cash transferred from plaintiff's account with the defendants, and securities transferred from her custodian account with the City Bank Farmers Trust Company.   I believe that such transactions fall under the very broad express authority given in 1923; in any event, the defense of ratification sustains the pledge of that portion of plaintiff's property.

In 1927, as has been stated above, the plaintiff received notice of several transfers of securities from the Farmers Loan & Trust Company to plaintiff's account, and from there simultaneously, or soon thereafter, to Ellicott's account.   The plaintiff acquiesced in these transactions.   In addition, numerous letters were written to the plaintiff in 1927, 1928 and 1929, notifying the plaintiff of the transfer of her securities as collateral for Ellicott's indebtedness.   The plaintiff was thereby informed of the magnitude of Ellicott's use of her securities.   She may be held reasonably to have known that Ellicott's speculative commitments were sub-

stantial, and that he had not hesitated to take full advantage of the authority she had given him in 1923. Furthermore, Ellicott testified that his mother had spoken to him about the fact that securities of such great value had been pledged.

On October 29, 1929, the crash in stock prices occurred. The next day plaintiff was notified by the City Bank Farmers Trust Company that a substantial list of securities held in her custodian account had been transferred, on Ellicott's instructions, to Morgan, Davis & Co. These securities never appeared in the statements of her brokerage account sent to plaintiff. The only inference that plaintiff could have drawn is that these securities were pledged in the special account. With this information before her she did nothing. If she thought that the defendants had converted these securities to their own use she would have made some inquiry. In the light of her prior acquiescence in similar transactions, the fact that she made no such inquiry makes it clear that she acquiesced in the only other possible alternative, that the securities were pledged in the special account. She gave expression to such acquiescence by certifying as correct the statement of account for August, 1930, although it was minus such securities. Thereby she ratified this transfer, assuming it to have been outside the scope of the 1923 authorization. (*Stiebel* v. *Haigney*, 134 App. Div. 516; *Columbia* v. *Lee*, 243 id. 361.)

On October 7, 1930, and on March 18, 1933, further transfers of securities from the custodian account with the City Bank Farmers Trust Company were made to Ellicott's special account. The defendants notified the plaintiff by letter of these transactions on the day each occurred. Plaintiff made no objection to these transfers. They were made by her son acting under a broad authority to use her securities as collateral, and she was so informed. The inference is unmistakable, especially in view of her prior conduct in the similar situation in 1927, that she intended to acquiesce in and ratify these transactions. (*Manning* v. *Heidelbach*, 153 App. Div. 790; *Ketchem* v. *Marsland*, 18 Misc. 450; Restatement of the Law of Agency, § 94.)

There were two transfers of cash from the plaintiff's regular account to Ellicott's special account. One was in December, 1929; the other was on September 17, 1931. The plaintiff received notice of the former transfer in her statement of account for December, 1929, in which an item appeared, " Cash T F D to E D Curtis Spl — $100,000." Plaintiff's counsel was not able to produce the original of this statement, but the entry is proved by the copy, and the mailing of the original is also proved. The latter transfer was fully set out in a letter from defendants to plaintiff on the day

preceding the transfer. Plaintiff's silence in the face of these notifications can only be construed as a ratification of the pledge of her funds as collateral for Ellicott's indebtedness. Especially is this true when the plaintiff has given no evidence to the contrary, and has failed to deny that she received these letters.

Plaintiff's conduct throughout the entire history of these transactions gives ample evidence of her acquiescence in what Ellicott was doing. She relied upon him fully and did not limit his authority in the slightest degree until a year and a half after practically the entire balance in the special account was applied to Ellicott's debt. Even after his authority was limited she did not make a claim against the defendants until almost a year later. Finally she permitted the transfer of the balance in Ellicott's special account to another brokerage firm. Although the plaintiff was entitled to this credit balance she consented to the transfer " to facilitate the matter for my son." To the very end plaintiff's conduct is consistent with the conclusion that she ratified Ellicott's acts.

To be sure, plaintiff was a person quite advanced in years throughout these transactions, but there is not the slightest evidence that she is not in full possession of all her faculties and understanding. Her failure personally to take the stand is understandable in view of her age; the failure to take her testimony by deposition is, however, totally unexplained. Some of Ellicott's testimony was to the effect that plaintiff did not know what was going on. I do not accept that testimony. Ellicott made a poor impression as a witness, and was far from being frank and candid. His lapses of memory were most convenient. From the entire record in this case, and even from certain statements by Ellicott, I find that plaintiff knew what was going on and that she was willing to allow the pledge transactions now in controversy to continue.

The same facts constituting ratification may be held to ground an equitable estoppel. (See *Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 159, 184; Tiffany on Agency [2d ed.], 155.) The defendants relied on the plaintiff's silence as a representation by her that such transactions were authorized. Had she made an immediate repudiation of Ellicott's authority to use cash from her account, or securities from the custodian account, the defendants could have realized on the securities already pledged without using plaintiff's assets any further as security for Ellicott's indebtedness. The plaintiff cannot, therefore, recover on the theory that the pledge of her property for Ellicott's indebtedness was unauthorized, in whole or in part.

Plaintiff contends, however, that the sale of the securities pledged in the special account entitles her to a recovery. The sales were

made without prior or subsequent notice to the plaintiff, but they were all made on Ellicott's order, and he had full knowledge thereof. As pledgor plaintiff was entitled to receive notice that the securities held as collateral were about to be sold, and failure to give such notice would constitute a conversion. (*Porter* v. *Parks*, 49 N. Y. 564; *Moore* v. *Rodewald*, 142 App. Div. 741.) Notice given to her duly authorized agent would be sufficient. Plaintiff, however, maintains that, even though Ellicott had authority to pledge her securities, he did not have authority to order or receive notice of their sale.

With that contention I cannot agree. Under the general power of attorney conferred upon him Ellicott had the broadest powers of management over plaintiff's property. True, the power of attorney gave him no authority to use the plaintiff's property for his own personal benefit. (*Porges* v. *U. S. Mortgage & Trust Co.*, 203 N. Y. 181.) But the authority given to Ellicott in 1923 was couched in the broadest terms. It gave Ellicott the authority not only to use plaintiff's securities as collateral for his account and to collect dividends thereon, but also to have such securities transferred out of her name " and in any and every manner to act in regard thereto." This sweeping authority, taken in connection with the general power of attorney, gave Ellicott the power to order sales of the pledged securities and to receive notice of such sales. No such authority existed in *Porter* v. *Parks* (*supra*) and *Moore* v. *Rodewald* (*supra*). The defendants acted on his order, and gave him notice. Consequently there was no conversion in the failure to give the plaintiff personally notice of the sales.

· Furthermore, the testimony that the sales of plaintiff's securities were ordered by Ellicott to strengthen his account is consistent with protection of plaintiff's interest in the pledged securities. Ellicott's account would be strengthened by the substitution of cash instead of securities as collateral. But sales to prevent a decline in value are acts of prudent management and as such are authorized by the general power of attorney despite the added effect they may have in providing additional margin for Ellicott's account.

There is also another bar to plaintiff's recovery for the alleged wrongful sale of the pledged securities. If the sale of such securities upon Ellicott's orders, and without notice to the plaintiff, was wrongful, this constituted a conversion. The measure of damages would be the difference, if any, between the value of the securities at the time of conversion and their value a reasonable time after the plaintiff learned of their conversion. (*Mayer* v. *Monzo*, 221 N. Y. 442.) No such proof of damage has been made although

it was stipulated at the trial that the court would decide whether the plaintiff was entitled to recover on the basis of the account submitted, and the parties were advised that proof of all facts should be adduced at that time.

Plaintiff contends further that the transfer of $500,000 from Ellicott's special account to satisfy the debit balance in Ellicott's regular account was unauthorized. Whether this is so need not be decided. The amount transferred was made up of sums realized upon the sale of securities pledged for Ellicott's indebtedness. The cash received from the sales of these securities was also subject to the pledge. When the cash was transferred in what amounted to foreclosure of the pledge, no damage resulted to the plaintiff. Even if there was, technically, a conversion of this amount of cash, it was an amount which the plaintiff had pledged to secure the indebtedness which it was used to satisfy. No damage could be occasioned by such a transaction.

In view of the foregoing disposition, it is unnecessary to pass upon the defense of the Statute of Limitations or of an account stated. Judgment for the defendants. Settle findings of fact, conclusion of law and final judgment in accordance with the foregoing decision on or before June thirtieth.