Edward B. Jacobs, as Executor of Annie Jacobs, Deceased, Plaintiff, *v.* National Bank of Far Rockaway, Defendant.

Supreme Court, Trial Term, Queens County, May 15, 1939.

*Joseph F. Finkelstein* and *Abraham Fishbein* for defendant.

*Benjamin F. Steinberg* and *Irving G. Wolff* for plaintiff.

FROESSEL, J. This is an action for conversion of a certificate for sixty shares of the common stock of Continental Can Company, alleged to have taken place on April 26, 1935. The action was commenced on January 25, 1937. The facts are virtually

undisputed. On January 3, 1934, Mary V. Jacobs, hereinafter referred to as the pledgor, negotiated a demand loan of $1,000 with the Corn Exchange Bank and Trust Company, which loan was secured by the certificate of stock afore-mentioned. This certificate was in the name of her mother-in-law, Annie Jacobs, who is plaintiff's testatrix, and was indorsed by the latter in blank. At the same time the said Annie Jacobs signed a consent for the hypothecation of said certificate, and by its terms she waived notice of time and place of sale. Thereafter, and on or about October 18, 1934, the pledgor arranged to borrow $2,500 from the defendant bank upon the same security, out of which moneys the prior loan was to be paid off. She gave a demand note for $2,500 signed jointly by herself and her husband, David B. Jacobs. Among other things the said demand note specifically empowered the defendant " to sell, assign and deliver the whole of the said securities * * * at any Broker's Board or at public or private sale, at the option of the said Bank, or of its President or Cashier, without either demand, advertisement or notice of any kind, which are hereby expressly waived." She also signed a writing directing the Corn Exchange Bank and Trust Company to " deliver the above security to the N/B of F. R." (the defendant) " upon payment of $1,000 and interest." The new loan was made, the old loan paid off and the difference, amounting to about $1,500, was credited to the pledgor's account. After making such credit on October 18, 1934, the defendant requested the pledgor to secure the signature of Annie Jacobs to the following hypothecation agreement, which was obtained:

" Authority to Hypothecate Securities

" October 18   *   *   *   1934

" This is to Certify that Mary V. Jacobs is hereby authorized to hypothecate for his account or otherwise the following list of securities

" Sixty (60) shares Continental Can Co. common standing in my name as security for any loan or loans made by
            The National Bank of Far Rockaway

(name of bank)

" to him or any other indebtedness of his to said Bank and to receive said security upon payment of such loan or indebtedness.

" Annie Jacobs   (L.S.) "

On March 1, 1935, said Annie Jacobs died. Her will was not filed until the following August, and letters testamentary were

issued on October 1, 1935. Meanwhile, defendant demanded payment of the note, which demand was not met, of all of which, it is conceded, Mary V. Jacobs and David B. Jacobs, the son of testatrix, had due notice. Thereupon, and on April 26, 1935, the pledgor executed a writing addressed to the defendant, as follows: '' This is your authority to sell for my account 60 shares of Continental Can Co. Common Stock at the market.''

On the same day, the stock was sold in the regular course of business for the sum of $4,343.91 net. After retaining the amount of indebtedness due it, defendant bank turned over to the pledgor the balance of $1,833.50.

Plaintiff now sues the defendant bank on two counts on the theory that there was a conversion of the stock by reason of the sale thereof without notice to Annie Jacobs or her representative of the time and place of sale, or the failure to institute judicial proceedings before the sale. In the first cause of action, plaintiff seeks the entire alleged value of such stock some six or seven months after the sale, to wit, $5,955, claiming that the conversion destroyed the lien which plaintiff concedes the defendant theretofore had; in the second cause of action, plaintiff seeks to recover only the excess of $1,833.50, which was paid over to the pledgor after the defendant had reimbursed itself for its loan. The first cause of action disaffirms the sale; the second is in affirmance thereof.

There is no question in this case concerning the fact that the defendant bank acted in entire good faith, that it fairly sold at the current market price, and that it made no profit whatever on the transaction except its legal interest. Nor is there any question that the security was validly and authorizedly pledged with the defendant bank by and with the consent not only of Mary V. Jacobs, but of Annie Jacobs as well.

But plaintiff contends, notwithstanding the provisions of subdivision (a) of section 162 of the Personal Property Law to the effect that title to a stock certificate can be transferred by delivery of the certificate in blank, that the rule which applies here is that one holding collateral security for a debt which the pledgor owes to him, may sell the collateral and apply the proceeds upon the debt, not only upon giving reasonable notice to the debtor or pledgor, but to the owner as well, and in support thereof he cites such cases as *Porter* v. *Parks* (49 N. Y. 564); *Moore* v. *Rodewald* (142 App. Div. 741) and *Curtis* v. *Thomson* (166 Misc. 870, affd. 253 App. Div. 806). Of course, the reciprocal rights and duties of the parties depend upon their relation to each other. As was said in *Small* v. *Housman* (208 N. Y. 115,

125): "But the rule is a general one which must be applied to an infinite variety of circumstances." Or, as it has otherwise been stated in *Smith* v. *Craig* (211 N. Y. 456, 461): "The general rule as between pledgor and pledgee in regard to giving notice of the time and place of selling the property pledged is subject to such other or different agreement relating thereto as may be made by them. They may agree upon a prescribed notice or dispense with any notice relating thereto. Such agreement may be express, or it may be found in the surrounding circumstances or in the course of dealing of the parties."

In the case at bar, Annie Jacobs expressly waived notice of the time and place of sale in the hypothecation agreement with the Corn Exchange Bank and Trust Company. When, with her consent, the defendant bank was substituted as pledgee with regard to the identical security, it also requested a hypothecation agreement from Annie Jacobs to it. This agreement expressly authorized the pledgor to hypothecate these same shares of stock " for any loan or loans made by the " defendant. " Any loan " would seem to place no limitation on either the amount or the conditions. The particular loan then negotiated was for $2,500, and one of its conditions was the pledgee's right to sell without notice. The certificate was delivered to her for the express purpose of pledging the same as collateral to her note, and there is no suggestion of any diversion from such purpose or any improper use of the same. Under similar circumstances in *Greene* v. *Faber* (158 App. Div. 149, 152), the court said: " That being so, no matter who owns these various securities, defendant * * * is authorized to sell the same in accordance with the terms of the hypothecation contract to pay the debt." Moreover, Annie Jacobs further authorized the pledgor " to receive said security upon payment of such loan or indebtedness."

In my opinion, by this hypothecation agreement to the defendant bank, taken in connection with the other evidence in the case, Annie Jacobs gave to Mary V. Jacobs complete and sweeping authority over the security in question. This included, as was said in *Curtis* v. *Thomson* (*supra*, p. 880) " the power to order sales of the pledged securities and to receive notice of such sales. No such authority existed in *Porter* v. *Parks* (*supra*) and *Moore* v. *Rodewald* (*supra*). The defendants acted on his order; and gave him notice. Consequently there was no conversion in the failure to give the plaintiff personally notice of the sales."

In *Porter* v. *Parks* (*supra*, pp. 568, 570), where the stock was to be used for margin in stock transactions, it was sold at private

sale "under an authority to a stranger" extending to other transactions of a speculative nature and without notice to either the pledgor or the owner, and there was no claim or pretense that the transaction was "anything but a naked pledge, without any special contract or provision for a sale of the pledge or a waiver of demand and notice". In *Moore* v. *Rodewald* (142 App. Div. 741, 742, *supra*), the situation was also quite different than in the instant case. The authorization there was "' to use collateral standing in my name as margin.'" It was virtually a naked pledge, and there was no agreement, express or implied, by either the owner or the pledgor, dispensing with notice, or a provision that otherwise disposed of the pledged property. The plaintiff claimed that she had been kept in ignorance as to the extent of her husband's dealings, and that she did not appreciate that her securities were liable to be sold to satisfy his debts. The facts were quite unlike those here.

However, even though the contention of the plaintiff were adopted that notice of the time and place of sale should have been given to Annie Jacobs or her representative, how could that have been achieved in this case? Annie Jacobs died on March 1, 1935. The stock was sold, following a demand, on April 26, 1935. Certainly notice could not have been effected upon her; and how was the defendant to know who her representative was, when her will was not filed until several months later? Her own son, David B. Jacobs, who took one third of her residuary estate under her will which was executed less than a month after she signed the hypothecation agreement, knew of the default and the consequences, and he, as comaker on the note, had expressly consented to a sale without notice. And even if the defendant could have guessed who would ultimately be her legal representative, what could he have done had he had notice, more than five months before he was empowered to act? "The object to be attained by giving the notice is to afford the debtor an opportunity to redeem, and to be present at the sale to see and know that it is fairly conducted and the property disposed of to the best advantage." (*Wheeler* v. *Newbould*, 16 N. Y. 392, 401; approved in *Small* v. *Housman*, 208 N. Y. 115, 124, *supra*.) That the sale was fairly conducted and the property disposed of to the best advantage is undisputed. Redemption was out of the question because the executor had no access to the estate's assets until October 1st. Under the circumstances, any notice to the executor in April, if the bank could have guessed who he was, would have been an idle gesture and could not have changed the situation so far as the plaintiff-executor was concerned. To this the plaintiff

would answer that judicial proceedings should have been instituted. If indeed that were necessary, the defendant has shown compliance.

Formerly the Code of Civil Procedure (§§ 1737–1741) provided for actions to foreclose liens upon a chattel. Upon the adoption of the Lien Law in 1897 (L. 1897, ch. 418), the Legislature enacted the statute providing for the sale of personal property to satisfy liens, by notice and advertisement (now Lien Law, §§ 200–202. Both remedies are now found in Lien Law, art. 9, §§ 200–210). Section 200 *et seq.* extended to all lienors the right of sale which has always existed at common law in a pledge of personal property. (*Dininny* v. *Reavis,* 100 Misc. 316, affd. 178 App. Div. 922.) These provisions apply to certificates of stock. (*Keleher* v. *O. Edwin Barnes, Inc.,* 236 App. Div. 760.)

The plaintiff concedes that the defendant acquired a valid lien upon the pledge of the stock. (*Moore* v. *Rodewald, supra.*) Upon default it would have been authorized to proceed under section 201 of the Lien Law, which provides in part as follows: '' *Notice of sale.* Before such sale is held the lienor shall serve a notice upon the owner with due diligence within such county, if such owner can be found when such lien arose, if not then to the person for whose account the same is then held personally ''.

Here, Annie Jacobs, the alleged owner, was dead. Certainly she could not be found within the county or elsewhere. She had no representative. Under these circumstances, the language '' then to the person for whose account the same is then held personally '' must be given force. Such person here was Mary V. Jacobs. Knowing of the default and its consequences, and both she and her husband having waived notice of sale in the collateral note, the defendant still took the precaution of receiving from her the written authorization '' to sell '' the securities '' at the market.'' She thereby expressly waived all further provisions of the Lien Law as to notice and advertisement, as she had the right to do. (*Letzter* v. *Nager,* 186 N. Y. S. 578.) Following the sale, the bank reimbursed itself with the amount due, and paid the surplus of $1,833.50 to Mary V. Jacobs in accordance with the hypothecation agreement signed by Annie Jacobs authorizing Mary V. Jacobs '' to receive said security upon payment of such loan or indebtedness.'' Certainly if she had the right to receive the whole of said security, she had the right to receive part of its proceeds, for the greater includes the lesser, and this conclusion is justified from all the evidence before me.

The result of the foregoing views is reinforced by plaintiff's own statement in the transfer tax proceedings upon the estate of his testatrix. There, the plaintiff-executor, who is also one of the three residuary beneficiaries under Annie Jacob's will, asserted the pendency of this very action, but added: '' and your executor believes that he will be unsuccessful in said action.''

Accordingly, defendant's motion to dismiss the complaint must be granted, and the complaint is dismissed upon the merits.